HOLLAND & KNIGHT LLP
Vito A. Costanzo, SBN 132754
Kristina S. Azlin, SBN 235238
Stacey H. Wang, SBN 245195
Kelsey M. Falkenberg SBN 333537
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Fax: 213.896.2450
Email: vito.costanzo@hklaw.com
kristina.azlin@hklaw.com
stacey.wang@hklaw.com
kelsey.falkenberg@hklaw.com

*Attorneys for Defendant,*
*Loyola Marymount University*

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

RYAN KHANTHAPHIXAY and
RILEY O'NEAL,

Plaintiffs,

vs.

LOYOLA MARYMOUNT
UNIVERSITY; MUNTU DAVIS, in
his official capacity as Public Health
Officer for Los Angeles County; and
BARBARA FERRER, in her official
capacity as Director of the Los
Angeles County Department of
Public Health,

Defendants.

CASE No.: 2:21-cv-06000-AB-KS

Hon. Andre Birotte Jr.

**DEFENDANT LOYOLA
MARYMOUNT UNIVERSITY'S
EVIDENTIARY OBJECTIONS IN
OPPOSITION TO PLAINTIFFS' *EX
PARTE* APPLICATION FOR:
(1) TEMPORARY RESTRAINING
ORDER; AND (2) ORDER TO
SHOW CAUSE RE: PRELIMINARY
INJUNCTION**

DATE: ---
TIME: ----
COURTROOM: 7B
United States District Court, Central
District of California Courthouse, 350
West First St. Los Angeles, CA  90012

---

1

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.      OBJECTIONS TO PLAINTIFFS' APPLICATION ...................................3

II.     OBJECTIONS TO THE DECLARATION OF RYAN
        KHANTHAPHIXAY ..........................................................................5

III.    OBJECTIONS TO THE DECLARATION OF RILEY O'NEAL.........19

IV.     OBJECTIONS TO THE DECLARATION OF DR. PAUL
        ALEXANDER .......................................................................................31

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

<u>**DEFENDANT LOYOLA MARYMOUNT UNIVERSITY'S EVIDENTIARY**</u>
<u>**OBJECTIONS IN OPPOSITION TO PLAINTIFFS' *EX PARTE***</u>
<u>**APPLICATION FOR: (1) TEMPORARY RESTRAINING ORDER; AND (2)**</u>
<u>**ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**</u>

Defendant Loyola Marymount University ("LMU" and/or "Defendant") respectfully submits the following Evidentiary Objections ("Objections") in Opposition to Plaintiffs' Ex Parte Application for: (1) Temporary Restraining Order; and (2) Order to Show Cause re: Preliminary Injunction. These Objections specifically relate to the Declarations of (1) Plaintiff Ryan Khanthaphixay [Dkt. No. 18-3]; (2) Plaintiff Riley O'Neal [Dkt. No. 18-4]; and (3) Dr. Paul Alexander [Dkt. No. 18-5], all submitted in Support of Plaintiffs Khanthaphixay and O'Neal's ("Plaintiffs") Application. For ease of reference, LMU's Objections are numbered sequentially.

## I.    <u>OBJECTIONS TO PLAINTIFFS' APPLICATION</u>

As a threshold matter, LMU objects to Plaintiffs' "recitation" of "facts" set forth in the Application. *See* Dkt. No. 18 at 6. The "facts" proffered are, in sum total:

> Plaintiffs respectfully refer the Court to and rely upon the following documents to set forth the relevant facts in this matter: Complaint with exhibits (Exhibit B), Declaration of Plaintiff Ryan Khanthaphixay (Exhibit C), Declaration of Plaintiff Riley O'Neal (Exhibit D), and Expert Declaration of Dr. Paul Alexander (Exhibit E).

*Id*. As detailed in LMU's concurrently-filed Opposition to the Application, this is plainly insufficient to grant temporary injunctive relief. "A party seeking a temporary restraining order or preliminary injunction simply cannot prevail when that motion is unsupported by evidence." *Bradford v. Ogbuehi*, No. 117CV01128SABPC, 2021 WL 2269767, at *3 (E.D. Cal. May 27, 2021) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) for the proposition that "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of

3

persuasion." [emphasis in original]).

"F.R.Civ.P. 65(b)(1)(A) permits a temporary restraining order ("TRO") only if specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1208 (E.D. Cal. 2013) ("Plaintiffs' papers lack necessary facts to show clearly the need for injunctive relief.") (internal quotation marks omitted). Here, however, Plaintiffs offer the Court nothing beyond "the allegations of the complaint and non-specific references to three declarations." *See Whitley v. Ritchie Grp.,* No. C17-0673RSL, 2017 WL 4819149, at *1 (W.D. Wash. Oct. 25, 2017) (granting summary judgment, noting "[c]ounsel does not deign to include a fact section in the memorandum, much less identify the underlying evidence that supports the (absent) factual assertions.") (citing *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996), and *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990)).

Plaintiffs leave it to the Court to scour the record instead of fulfilling their obligation to present the Court with *specific facts* establishing a *clear showing* of immediate and irreparable harm. *See* Fed. R. Civ. P. 65(b)(1)(A). The Court should decline to do so, and entirely disregard Plaintiffs' incorporation by reference of entire declarations in the Application. *See, e.g., Irigaray Dairy v. Dairy Emps. Union Loc. No. 17 Christian Lab. Ass'n of the United States of Am. Pension Tr.,* 153 F. Supp. 3d 1217, 1236 (E.D. Cal. 2015) ("The Court will rely only on the evidence cited by the parties. [citation]. It will not unilaterally review hundreds of pages . . .to see if they might contain information relevant to this motion," and granting defendant's motion for summary judgment) (citing *Stanislaus Food Prods. Co. v. USS–POSCO Indus.*, 803 F.3d 1084 (9th Cir. 2015) ["[C]ourts need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth with adequate references so that it

4

1    could conveniently be found."]); *see also White*, 904 F.2d at 458 (The court need

2    not "speculate on which portion of the record the nonmoving party relies, nor is it

3    obliged to wade through and search the entire record for some specific facts that

4    might support the nonmoving party's claim."]

5    **II.**    **OBJECTIONS TO THE DECLARATION OF RYAN**

6         **KHANTHAPHIXAY**

| No. | Specific Objections to the Declaration of Ryan Khanthaphixay ("Khanthaphixay Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| **1.** | **Khanthaphixay Decl. ¶ 7**<br><br>"Because I am adamant about protecting my religious practice and beliefs and, thus, cannot undergo a medical intervention or treatment or take medicine that conflicts with these, I submitted a religious exemption request on June 20, 2021. On June 23, 2021, the University rejected my exemption request stating that I had not adequately or properly responded to its prompts." | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant asserts that his religious practice and beliefs preclude him from "undergo[ing] a medical intervention or treatment or tak[ing] medicine that conflicts with these." Declarant fails to lay a foundation in any way for the proposition that taking a COVID-19 vaccine is actually forbidden by his religious practice, and is entirely speculative.<br><br>"A [witness's] belief . . ., without evidence supporting that belief, is no more than speculation or unfounded accusation," and must be accordingly excluded. *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("It is not | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

| No. | Specific Objections to the Declaration of Ryan Khanthaphixay ("Khanthaphixay Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | | enough for a witness to tell all she knows; she must know all she tells."). | |
| **2.** | **Khanthaphixay Decl. ¶ 7**<br><br>"Because I am adamant about protecting my religious practice and beliefs and, thus, cannot undergo a medical intervention or treatment or take medicine that conflicts with these, I submitted a religious exemption request on June 20, 2021.  On June 23, 2021, the University rejected my exemption request stating that I had not adequately or properly responded to its prompts." | ***Best Evidence.***  FRE 1002.  The Declarant references two documents, an exemption he submitted and a purported rejection he received, and testifies regarding the substance of the documents.  However, the records speak for themselves.<br><br>***Hearsay.***  FRE 801, 805.  To the extent that Declarant is summarizing statements he conveyed to LMU, such statements are out-of-court and offered for the truth of the matter, and do not fit within any exception or exclusion to the hearsay rule. | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |
| **3.** | **Khanthaphixay Decl. ¶ 8**<br><br>Because I am adamant about protecting my religious practice and beliefs and, thus, cannot undergo a medical intervention or treatment or take medicine that conflicts with these, that same day I redrafted and resubmitted my request, this time being even more detailed and citing applicable Scripture. On June 28th the | ***Lacks Foundation and Speculation.***  FRE 602, 701. Declarant fails to lay a foundation in any way for the proposition that taking a COVID-19 vaccine is actually forbidden by his religious practice, and is entirely speculative. | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Ryan Khanthaphixay ("Khanthaphixay Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | University denied my exemption request, again. | ***Best Evidence.*** FRE 1002. The Declarant references two documents, a second exemption he submitted and a purported rejection, and testifies regarding the substance of the documents. The records speak for themselves.<br><br>***Hearsay.*** FRE 801, 805. Declarant is summarizing statements he conveyed to LMU, which are inadmissible hearsay. | |
| 4. | **Khanthaphixay Decl. ¶ 8**<br><br>"I could not believe it. I had carefully followed the University's prompts and went to great lengths to be as clear, detailed, and specific as possible to explain how receiving the vaccine would force me to violate my sincerely held religious beliefs, and the University did not even seem to be actually hearing and weighing this, or to care." | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant fails to establish in any way that he has personal knowledge of LMU's rationale for denying his exemption request (if such occurred), and speculates as to what LMU considered in reviewing the exemption request.<br><br>***Hearsay.*** FRE 801, 805. Declarant is summarizing statements he conveyed to LMU, which are inadmissible hearsay. | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |
| 5. | **Khanthaphixay Decl. ¶ 12** | ***Hearsay.*** FRE 801, 805. | [__]<br>**Sustained** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Ryan Khanthaphixay ("Khanthaphixay Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | "Because I was so upset by the University's responses to my requests, I started asking others if they had submitted exemptions and what result they received. At this time, I found out that the University was granting religious exemption requests of students belonging to different religions. I could not believe it. I was completely shocked and really disappointed. As a Christian – and a good person, in general – I would never want or encourage or condone religious discrimination or differential treatment among different religions. However, as a Jesuit university, I could not understand why LMU would not understand the principles or beliefs that were preventing me from being able to receive one of the COVID-19 vaccines." | Declarant is summarizing his out-of-court statements and conversations with others, which is inadmissible hearsay. ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant fails to establish in any way that he has personal knowledge that "the University was granting religious exemption requests of students belonging to different religions," or his source of knowledge for this information. Declarant also speculates that LMU was granting others of different religions exemptions, but not him. Declarant additionally speculates that LMU was discriminating against him on the basis of religion. Further, Declarant speculates as to the rationales for why LMU denied his exemption. | [__] **Overruled** |
| 6. | **Khanthaphixay Decl. ¶ 13** | ***Lacks Foundation and Speculation.*** FRE 602, | [__] **Sustained** |

8

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Ryan Khanthaphixay ("Khanthaphixay Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | "The only reason I could find was that LMU was discriminating against me *because of* my sincerely held Christian beliefs. Perhaps they were giving preferential treatment to other religions so as to not appear to be discriminatory, and further reinforcing this by denying students "in its" religion preferential or exempted treatment. I had no idea, but I was determined to find out, and to obtain a religious exemption to accommodate my religious beliefs and practice." | 701.  Declarant speculates that LMU denied his exemption because of religious discrimination, specifically, his Christian beliefs.  Declarant speculates as to LMU's rationale for doing so, and admittedly states that he "had no idea" of why LMU granted some exemptions, but not others. | [__] **Overruled** |
| 7. | **Khanthaphixay Decl. ¶ 14**<br><br>"I spoke to a counselor about my fear that I was being denied a religious exemption because of my religion. She recommended that I call LMU's offices of Human Resources and Student Affairs and gave me their contact information." | *Hearsay.*  FRE 801, 805. Declarant is summarizing his out-of-court statements and conversations with others, which is inadmissible hearsay. | [__] **Sustained**<br><br>[__] **Overruled** |
| 8. | **Khanthaphixay Decl. ¶ 15**<br><br>"On July 10, 2021, I called LMU's offices of Human Resources and Student Affairs two and three times, respectively, to lodge a formal complaint of potential religious discrimination." | *Hearsay.*  FRE 801, 805. Declarant is summarizing his out-of-court statements and conversations with others, which is inadmissible hearsay. | [__] **Sustained**<br><br>[__] **Overruled** |
| 9. | **Khanthaphixay Decl. ¶ 16** | *Hearsay.*  FRE 801, 805. Declarant is summarizing his out-of-court statements | [__] **Sustained** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Ryan Khanthaphixay ("Khanthaphixay Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | "I did not hear back from either office, so, again, on July 12th I called LMU's offices of Human Resources and Student Affairs to re-submit my complaint of potential religious discrimination." | and conversations with others, which is inadmissible hearsay. | [__] **Overruled** |
| **10.** | **Khanthaphixay Decl. ¶ 19** <br><br> "I truly believe that a less-persistent student would not have been granted an exemption. My friends are too scared to even submit one, let alone try four times. Many of my friends do not even "see the point" because we are going to have to test twice a week and mask and live separately from our friends, and may not be able to take the classes that we want or need to take in person, and be forced to quarantine. For them, this is worse than "just getting" to the vaccine, however objectionable they find it." | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant speculates that LMU would not have granted a "less-persistent" student an exemption. Declarant speculates that his "friends are too scared to even submit one," and fails to lay any foundation for this knowledge. Declarant speculates as to what is "worse than" something "for them," again, failing to lay any sufficient foundation. | [__] **Sustained** <br><br> [__] **Overruled** |
| **11.** | **Khanthaphixay Decl. ¶ 20** <br><br> "Part of me is relieved to not have to receive a COVID-19 vaccine, but the other part of me is still really, really anxious and – honestly – scared of what this means for me heading into school. My peers are going to know my vaccination status because I will be masking, not living with my friends on-campus, and because I will have to test at least twice a | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant speculates entirely about hypotheticals with no foundation, and asserts with no grounding whatsoever that other students have been retaliated against. Declarant spins a dire tale of what he speculates | [__] **Sustained** <br><br> [__] **Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Ryan Khanthaphixay ("Khanthaphixay Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | week. If they disagree with me about getting the vaccine, are they going to retaliate against me, as they have done to other students in the past about political and other issues? If my professors know that I am unvaccinated, are they going to call me out in class or allow other students to? Are they going to treat me differently or – worse yet – grade me differently because of it? Is this going to affect their opinion of my academic performance and my potential when it comes to getting references for jobs and internships? Can I play intramural sports and attend games and other school-related events? Even if I can, will I be required to mask,which we now know is dangerous to do while exercising, and/or test even more, and/or sit apart from my vaccinated friends?" | might arise, but none of this has any foundation.<br><br>Declarant speculates that his peers will know his vaccination status "because [he] will be masking," despite the fact that the entire County of Los Angeles is under a mask mandate – vaccinated and unvaccinated individuals alike.<br><br>Declarant also lacks a foundation for his improper lay opinion that "we now know [it] is dangerous to [wear a mask] while exercising."<br><br>***Improper Lay Opinion***. FRE 701. Declarant's statement that being required to wear a mask is dangerous to do while exercising is an improper lay opinion. Lay testimony must be "rationally based on the witness's perception." Fed. R. Evid. 701(a). In presenting lay testimony, "the personal knowledge requirement may be met if | |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Ryan Khanthaphixay ("Khanthaphixay Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | | the witness can demonstrate firsthand knowledge or observation." *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014). Lay witnesses may not, however, "testify based on speculation . . . ." *United States v. Vera*, 770 F.3d 1232, 1242 (9th Cir. 2014). | |
| 12. | **Khanthaphixay Decl. ¶ 23**<br><br>"I also have religious objections to inserting something up my nose at least twice a week to harvest my biological material and to having this stored in an unidentified database and indiscriminately shared with the CDC and other governmental agencies LMU deems appropriate without my knowledge or consent." | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant entirely speculates that his "biological material" is "stored in an unidentified database and indiscriminately shared" by LMU (or anyone, for that matter).<br><br>***Improper Lay Opinion.*** FRE 701. Declarant's statement is predicated on having complete knowledge of the COVID testing and reporting process, which is not within the Declarant's personal knowledge. | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |
| 13. | **Khanthaphixay Decl. ¶ 24**<br><br>The worst part of all of this is that all of this is going to start happening to me, regardless of my | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant speculates that he will suffer | [__]<br>**Sustained** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Ryan Khanthaphixay ("Khanthaphixay Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | beliefs or preferences, for "no reason." I am going to be marked, segregated, potentially denied academic, professional, and social opportunities, and my relationships and overall school experience completely shifted if not ultimately ended, all because I cannot receive a vaccine *even if I am healthy and pose zero risk to my community.*" | untoward consequences of varying sorts, including being "marked, segregated, potentially denied…opportunities," with no foundation or basis in fact for such statements.<br><br>Declarant also speculates that he "pose[s] zero risk to [his] community" as an unvaccinated individual, and lacks a foundation for this opinion.<br><br>***Improper Lay Opinion.*** FRE 701. Declarant's statement about posing zero risk is an improper lay opinion, and countered by significant factual evidence, government documents, and records of which this Court may take judicial notice. | [__]<br>**Overruled** |
| **14.** | **Khanthaphixay Decl. ¶ 26**<br><br>"These terms were so shocking to me and, more importantly, grossly unfair where I would not have to accept such terms if I were exempted from any other vaccine mandated by the school. I also have zero understanding why I would | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant speculates that he would not have to accept such terms if he were exempted from a vaccine, which he lacks any foundation or personal knowledge of. The | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

13

| No. | Specific Objections to the Declaration of Ryan Khanthaphixay ("Khanthaphixay Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | have to stay away from campus if a "reasonably adjacent campus community" had an outbreak. What is a "reasonably adjacent campus community" and what is the an "outbreak"? Why should I quarantine if that community is having an outbreak? Who will be tracking and reporting this and determining what constitutes enough of an "outbreak" or a close enough "community" to justify me being forced out of class? What will happen to my coursework and performance if I continuously pulled out of school for these "outbreaks"?'" | remainder of the paragraph is mere speculation and hypothetical, rhetorical questions. | |
| 15. | **Khanthaphixay Decl. ¶ 27**<br><br>"I also do not understand – nor have I ever heard of this being asked in any other scenario, whether academic, professional, recreational or otherwise –why I would assume "all liability arising from my decision not to be vaccinated." What does "all liability" mean? That is such an overbroad, excessive, burdensome, assumption of liability that cannot be legal. It is also totally Unreasonable and unfair for the school to force me to accept this kind of liability because this means I am accepting responsibility for the health of students, faculty, staff, and other | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant speculates and lacks a foundation for his improper lay opinion that LMU's policies are so "overbroad, excessive, burdensome" that they "cannot be legal". The remainder of the paragraph is mere speculation and hypothetical, rhetorical questions, or speculation about what the scope of a liability waiver includes. Declarant cannot possibly know that he is "accepting responsibility for the health of students, faculty, | [__] **Sustained**<br><br>[__] **Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Ryan Khanthaphixay ("Khanthaphixay Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | members of our community who potentially do not even take care of themselves. I would also be accepting this liability without any way of ascertaining that I – and not another member of our 10,000+ member community, *including vaccinated individuals, including visitors, including their friends, families, and contacts* – were the actual cause of any COVID-19 related harms. Is LMU going to completely close off its campus and track every single person's vaccination status and coming's and going's? How is LMU going to confirm that it was *my un*vaccinated status that contributed to whatever harm LMU is trying to force me to assume liability for? How will I pay for this liability? Will my family have to, instead? How could this be legal? | staff, and other members of our community" when he simultaneously states that he does not know what "all liability" means. | |
| 16. | **Khanthaphixay Decl. ¶ 28** "Because of the Policy, I was forced to back out of my housing agreement and my roommates got split up into two groups of two, with each group now rooming with two random people. They did not get their preferred housing, as we were not a full group of five people anymore that were able to live in Palm South, the new 5-person campus apartment." | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant speculates and lacks a foundation for his assertion that his roommates "did not get their preferred housing" as a result of him "being forced to back out of [his] housing agreement". | [__] **Sustained** [__] **Overruled** |

15

| No. | Specific Objections to the Declaration of Ryan Khanthaphixay ("Khanthaphixay Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| **17.** | **Khanthaphixay Decl. ¶ 29** Although my friends understand why I did not get the vaccine and that I am being forced out of our living situation by the University, not my own will or preference, the University has completely deprived us of our desired and intended experience and forced us to live with complete strangers against our will – who may pose a greater risk to our health and safety – than if we were allowed to live together. We are adults and should be permitted to live with whomever we want, knowing the benefits and "risks" of this arrangement. This is especially true whereas, now, there is *zero* guarantee that the vaccinated members of the LMU community will not contract and spread the virus themselves to the same extent as unvaccinated individuals. In fact, my friends are more concerned living with vaccinated students they do not know or necessarily trust, who could be carrying and transmitting the virus without being transparent and sharing this information, *for fear of retaliation, segregation, testing, and isolation by the University.*" | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant speculates and lacks a foundation for his improper lay opinion that LMU is "being forced out of [his] living situation," and that "liv[ing] with complete strangers against our will – who may pose a greater risk to our health and safety – than if we were allowed to live together." Declarant also speculates and lacks a foundation for his improper lay opinion that "now, there is *zero* guarantee that the vaccinated members of the LMU community will not contract and spread the virus themselves to the same extent as unvaccinated individuals." Finally, Declarant speculates and lacks a foundation for testifying as to what his friends may, or may not, be "more concerned" with. ***Improper Lay Opinion***. FRE 701. Declarant's | [__] **Sustained** [__] **Overruled** |

16

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Ryan Khanthaphixay ("Khanthaphixay Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | | statements about disease transmissibility are beyond the purview of a layperson. | |
| 18. | **Khanthaphixay Decl. ¶ 30** "Because LMU announced the Policy so close to the start of school, where students usually figure out their housing situation the summer, if not the year before, I have had to find an apartment off-campus that still had a spot for one unvaccinated guy. I was able to find housing; however it costs approximately $300.00 more per month, *excluding* utilities and all of my meals – which I expect will cost an additional $2,100.00 more per month – since I am no longer on the campus housing meal plan. I am still trying to figure out how I to manage these additional financial burdens, which the University never said I would have to bear, and for which I did not plan for." | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant speculates and lacks a foundation for his testimony that LMU's timing of the policy caused him to have to find an off-campus apartment. Declarant also speculates as to estimated expenses  Declarant also speculates and lacks a foundation for his improper lay opinion that "now, there is *zero* guarantee that the vaccinated members of the LMU community will not contract and spread the virus themselves to the same extent as unvaccinated individuals."  Finally, Declarant speculates and lacks a foundation for testifying as to what his friends may, or may not, be "more concerned" with.  ***Improper Lay Opinion***. FRE 701. Declarant's | [__] **Sustained**  [__] **Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Ryan Khanthaphixay ("Khanthaphixay Decl.") | | |
| --- | --- | --- | --- |
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | | statements about disease transmissibility are beyond the purview of a layperson. | |
| 19. | **Khanthaphixay Decl. ¶ 34**<br><br>"Again, I am really grateful that my religious exemption was finally accepted; but I question the University's reasons for doing so. Was it really because they read and believed my reasons, or because I filed a complaint for religious discrimination after the third rejection? If the latter, do other faculty and staff feel this way and will I be similarly discriminated or retaliated against? I am seriously scared and anxious about what this school year has in store for me where this appears to be the University's mentality." | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant speculates and lacks a foundation for his testimony about LMU's rationales for accepting/denying his exemption requests. The remainder of the paragraph amounts to hypothetical or rhetorical questions. | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |
| 20. | **Khanthaphixay Decl. ¶ 35**<br><br>"I am extremely anxious and scared to go back to school branded by my mask as "unvaccinated," where students can be cruel and aggressive and have been shown to lash out. I do not want to test at least twice a week. I do not want to live apart from my friends. I do not want to delay my academic progress, or to have any issues with my professors or peers. I do not want to not play | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant speculates about a veritable cornucopia of hypothetical, speculative situations which may, or may not, occur. None of this is grounded in any foundation, or personal knowledge.<br><br>***Improper Lay Opinion.*** FRE 701. Declarant's statements about disease | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

18

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Ryan Khanthaphixay ("Khanthaphixay Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | sports or be excluded from any part of my college experience. I do not want to be denied access to campus or my classes because of an "outbreak" "in the area". I do not want to be liable for the health and safety of everyone on campus that might have *zero* correlation to my health and physical condition and more to do with those individuals' health (or lack thereof). I do not want to be targeted and terrorized because I upheld and stood true to my Faith and religious beliefs. I do not want to be treated differently – worse – than vaccinated students simply because I am not vaccinated, especially where I am healthy, and where vaccinated people get access and privileges without restraint, even though they might *not* be and might actually be spreading the virus, not me." | transmissibility are beyond the purview of a layperson. | |

### III.   OBJECTIONS TO THE DECLARATION OF RILEY O'NEAL

| No. | Specific Objections to the Declaration of Riley O'Neal ("O'Neal Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| 21. | **O'Neal Decl. ¶ 6.** | ***Lacks Foundation and Speculation.*** FRE 602, | **[__]**<br>**Sustained** |

19
LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Riley O'Neal ("O'Neal Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | "I was really upset when I learned of the Vaccine Policy because I cannot get any of the available COVID-19 vaccines due to a medical condition." | 701.  Declarant speculates that a medical condition prevents her from getting any of the available COVID-19 vaccines, without laying a foundation for how she is aware of that information.<br><br>***Improper Lay Opinion***. FRE 701. Declarant's statements about whether a medical condition prevents one from obtaining a COVID-19 vaccine are beyond the purview of a layperson, particularly when coupled with no foundation. | [__]<br>**Overruled** |
| 22. | **O'Neal Decl. ¶ 9.**<br><br>"I do not want to be labeled "unvaccinated," which everyone will know by my mask-wearing, test-taking, and living in the "unvaccinated-only" dorm. This is a small campus. Everyone knows who everyone else is, for the most part, and even if they do not, once your name is known – for whatever reason, good or bad – it is<br>easy to find out in our private Facebook group." | ***Lacks Foundation and Speculation.***  FRE 602, 701.  Declarant speculates that others will "label" her as unvaccinated, and that they will "know" she is unvaccinated due to a variety of reasons.  She also speculates that others will find out who she is on a private Facebook group. | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |
| 23. | **O'Neal Decl. ¶ 10.**<br><br>"When students have been asked to discuss the University's | ***Lacks Foundation and Speculation.***  FRE 602, 701.  Declarant speculates that others retaliate against | [__]<br>**Sustained** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Riley O'Neal ("O'Neal Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | vaccination policy, many lashed out, threatened unvaccinated students – or those considering returning to campus unvaccinated – and wished them ill-will. I have personally seen how far this kind of "debate" can go and its terrifying. For example, in 2020 around the time of the election, old tweets by a student "Senator" of the Associated Students of Loyola Marymount surfaced in which she discussed "illegal immigrants" and supported Trump's strict border policies. In response, anti-Trump, non-conservative students cyberbullied and threatened her, conducted an "impeachment hearing," and voted to impeach her from the Board, an LMU first. I have seen student responses to political and social debates and am concerned the same anger or hostility will be directed to me because of my inability to get vaccinated, which will be known to all due to the University's public masking, isolation, and testing requirements." | her and that she will be the victim of anger and hostility because of her inability to receive the vaccine.<br><br>***Hearsay.***  FRE 801, 805. Declarant is summarizing extensive out-of-court statements and conversations with others, which is inadmissible hearsay. | [__]<br>**Overruled** |
| 24. | **O'Neal Decl. ¶ 11.**<br><br>"The University has not told us how we will attend class or if we will be excluded from certain areas; however, I am concerned that we will be segregated from "vaccine-only" areas, just as we | ***Lacks Foundation and Speculation.***  FRE 602, 701.  Declarant speculates that she will be segregated, restricted from fraternizing, and suffer backlash from others. | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Riley O'Neal ("O'Neal Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | are being required to live in "unvaccinated-only" dorms. Further, even if the vaccinated and unvaccinated are allowed to "fraternize," I am genuinely concerned about backlash from other students, faculty members and staff because LMU's "#LMUTogether" and "#VAXLMU" campaigns have not helped this discourse or dynamic, as they have painted unvaccinated students as selfish, uncaring, non-members of the LMU community. LMU'S Vaccine Policy and corresponding campaigns have created an obvious, palatable, hostile divide between vaccinated and unvaccinated students." | ***Hearsay.*** FRE 801, 805. Declarant is summarizing extensive out-of-court statements and conversations with others, which is inadmissible hearsay. | |
| 25. | **O'Neal Decl. ¶ 11.**<br><br>"I also do not want to undergo invasive nasal-swab testing twice a week, generally, but especially when there are less-invasive, more-accurate tests available, and we now know the PCR Tests that were authorized for use were discontinued because they could not distinguish between influenza and COVID-19. If the school truly cares about identifying *active* infections *of COVID-19* on campus, why is it still using these tests?" | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant speculates that there are less invasive, more accurate tests available for COVID-19 than those used by LMU. She also lacks a foundation for this testimony. Declarant also speculates as to LMU's motives and rationales for using, or not using, certain COVID-19 tests.<br><br>***Improper Lay Opinion.*** FRE 701. Declarant's statements about efficacy | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Riley O'Neal ("O'Neal Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | | or accuracy of COVID-19 tests is far beyond the purview of layperson testimony. | |
| 26. | **O'Neal Decl. ¶ 13.** "I am also seriously concerned about LMU having my genetic material, storing my results on some "HIPAA-protected platform" that it has not identified or confirmed who it belongs to or is maintained by, and sharing my private medical / health information with the Los Angeles County and California Departments of Public Health and/or the CDC, regardless of my results. This seems unnecessary and an excessive invasion of my privacy that I am absolutely not ok with." | *Lacks Foundation and Speculation.* FRE 602, 701. Declarant entirely speculates that her "genetic material" is stored by or controlled by LMU, and that the information will (or will not) be shared with anyone.<br><br>*Improper Lay Opinion.* FRE 701. Declarant's statement is predicated on having complete knowledge of the COVID testing and reporting process, which is not within the Declarant's personal knowledge. | [__] **Sustained**<br><br>[__] **Overruled** |
| 27. | **O'Neal Decl. ¶ 15.** "Transferring is not an option for me because of my major. I applied for extremely prestigious and competitive programs that only took a limited number of students. I am not specializing in a generic major that can be easily transferred to another university. Even if I could, there are only a limited number of universities in the country that offer film and television coursework, and not all | *Lacks Foundation and Speculation.* FRE 602, 701. Declarant entirely speculates that she cannot transfer. As Declarant helpfully points out, she was accepted to other top programs of the sort. Moreover, Declarant speculates that competitive programs only accepted a certain number of students. | [__] **Sustained**<br><br>[__] **Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Riley O'Neal ("O'Neal Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | of these are created equal. Again, I specifically chose to attend LMU because of its reputation and the opportunities it would unlock for me in this particular profession. It is disingenuous and also unrealistic to suggest or presume that I could transfer to "any other school" and receive the same education and opportunities that I have at LMU." | | |
| 28. | **O'Neal Decl. ¶ 16.**<br><br>"If LMU does announce "other requirements" that exclude me from continuing to attend LMU, this would seriously impact my graduation, which would in turn impact my scholarship, internship opportunities and job prospects, imposing a heavy financial burden on me and my family." | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant entirely speculates LMU will announce other requirements, that other requirements will functionally and actually prevent her from attending LMU, and that these hypothetical happenings would impact Declarant's scholarship, opportunities, and impose a heavy financial burden. This is totally speculative, hypothetical, and not rooted in any foundation. | **[__] Sustained**<br><br>**[__] Overruled** |
| 29. | **O'Neal Decl. ¶ 18.**<br><br>"I am also genuinely concerned for my safety because of how LMU has designated dorms as "vaccinated" and "unvaccinated." LMU has, essentially, put a | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant speculates that she will be targeted by others based on no grounding-in-fact, and lacks a foundation for her | **[__] Sustained**<br><br>**[__] Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Riley O'Neal ("O'Neal Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | target on our backs for people who disagree with exemptions to confront us. Again, I have seen the type of harassment that students are capable of and I truly fear for the safety of unvaccinated students living in this dorm." | testimony that LMU's designation of dorms has created a safety hazard of any sort. | |
| 30. | **O'Neal Decl. ¶ 19.**<br><br>"I am also concerned with wearing a mask now that so many studies have been conducted showing that they do not work and actually expose the wearer to respiratory issues, including bacterial pneumonia and hypoxia. The University is requiring us to wear masks while working out in the gym; however, students have died wearing masks while working out – at practice, not just competing – and I am terrified this will happen to me. It's especially confusing when the whole purpose of the Policy, as I understand it, is to keep our community safe and healthy. How is preventing me from working out and not taking care of my mental and physical wellbeing (so that I do not wear a mask while working out and possibly die), or otherwise workout while wearing a mask and potentially die, for my health or safety?" | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant entirely speculates that wearing masks exposes the wearer to respiratory issues, and lacks a foundation for any of this testimony. She also lacks a foundation and speculates that "students have died wearing masks while working out" – an inflammatory, and baseless unsupported claim. The remainder of the paragraph is hypothetical or rhetorical speculation.<br><br>***Improper Lay Opinion.*** FRE 701. Declarant offers testimony about studies showing masks expose wearers to respiratory issues. This is beyond the purview of lay witnesses. | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |
| 31. | **O'Neal Decl. ¶ 20.** | ***Lacks Foundation and Speculation.*** FRE 602, | [__]<br>**Sustained** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Riley O'Neal ("O'Neal Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | "I am also concerned with wearing a mask because grading at LMU is not done anonymously, e.g. with a student ID number, and masking will identify us as "unvaccinated" which might influence our professor's grading, depending on their opinion about this issue. I am worried that if they know I am not vaccinated, they will evaluate me and/or my work negatively or potentially more critically and, either way, damage the academic success I have been able to achieve as an Arrupe Scholar. I am fearful that if my grades drop, I will lose this scholarship, as well as professional opportunities. This is in addition to and separate from the fact that my professors might not recommend me for internships or jobs based upon my vaccination status." | 701.  Declarant entirely speculates and fails to establish a foundation for her testimony about LMU's grading policies. She further speculates that wearing a mask will cause professors to change their grading in some way. This, Declarant speculates, may cause her to lose her scholarship and might not be recommended by her professors for internships or jobs.   It is pure speculation. | [__] **Overruled** |
| 32. | **O'Neal Decl. ¶ 21.** "This is all so upsetting because none of it makes sense and, ultimately, is not fair because I physically cannot get a COVID-19 vaccine. There are no similar conditions or requirements for those granted vaccine exemption from any other vaccine the University requires." | ***Lacks Foundation and Speculation.***  FRE 602, 701.  Declarant speculates and fails to establish her knowledge of LMU's vaccine policies, and whether any of them have requirements for exemptions. | [__] **Sustained** [__] **Overruled** |
| 33. | **O'Neal Decl. ¶ 22.** "No part of the Vaccine Policy makes sense or will actually help | ***Lacks Foundation and Speculation.***  FRE 602, 701.  Declarant entirely | [__] **Sustained** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Riley O'Neal ("O'Neal Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | LMU achieve its presumed goal of keeping everyone "healthy and safe." The test LMU intends to use on me and the other unvaccinated students does not test for active infection, let alone *illness* – since they are not analyzed in a clinical setting with a healthcare provider evaluating my symptoms with my results – and the tests are actually *intended* for testing of symptomatic individuals in a clinical setting, only. Also, more and more data is showing that masks cause harm, and we now know that the vaccinated contract and spread the virus with the same viral load as unvaccinated. Why should I be segregated, isolated, tested, and tracked because of my medical condition, even if I am *healthy*? | speculates and fails to establish a foundation for her testimony about how she knows of which COVID-19 tests LMU intends to use, how those tests are processed, and why (supposedly) those tests are inaccurate or invalid. She further speculates that wearing a mask causes harm.<br><br>***Improper Lay Opinion.*** FRE 701. Declarant offers testimony about the efficacy of tests, the effectiveness of LMU's proposed strategy, and data showing masks cause harm. None of this is supported, and all of this is beyond the purview of lay witnesses. | [__]<br>**Overruled** |
| 34. | **O'Neal Decl. ¶ 25.**<br><br>"These terms were not stated in any other announcement the University made regarding the Vaccine Policy. I did not discover these additional "terms" until I was submitting my exemption request and was completely shocked and distraught by how broad and ambiguous they were, and also how unfair. Unfortunately, I was concerned | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant speculates that the purported conditions which she recounts (which are themselves hearsay) are "not required for any other vaccine exemption." Declarant does not lay any foundation for this testimony. | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Riley O'Neal ("O'Neal Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | more about my life and protecting that then fighting these terms – also there was no option to not accept them – so I checked the boxes and submitted my request. It is my understanding these conditions are not required for any other vaccine exemption." | ***Hearsay.*** FRE 801, 805. Declarant is summarizing out-of-court statements, which is inadmissible hearsay. | |
| 35. | **O'Neal Decl. ¶ 26.** "It is incomprehensible and – quite frankly – terrifying that I have been forced to assume "all liability arising from my decision not to be vaccinated." First, it is not my decision not to be vaccinated against COVID-19. I literally cannot receive a vaccine because I could die. Second, what is "all liability"? What harms are included to this and to whom? When do they cut off, if at all? Third, how is LMU going to prove that the harms for which I will be liable "arose from" my particular unvaccinated status? How do we know these were not caused by a *vaccinated* student – since we now know per the CDC that they can contract and transmit the virus as much as an unvaccinated individual – or an *unvaccinated* friend or family member of a vaccinated or unvaccinated student? How do we know it will not have been caused | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant extensively speculates about the scope of a liability waiver, and opines on a number of hypothetical questions— all of which are speculative and not competent evidence.<br><br>***Hearsay.*** FRE 801, 805. Declarant is summarizing out-of-court statements, which is inadmissible hearsay.<br><br>***Improper Lay Opinion.*** FRE 701. Declarant offers testimony about virology and spread of COVID-19, which is outside the bounds of permissible lay testimony. | [__] **Sustained**<br><br>[__] **Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Riley O'Neal ("O'Neal Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | by a campus visitor, e.g. delivery person, speaker, guest, public person accessing LMU's facilities, etc.? Is campus going to be closed off to anyone other than its students, faculty, and staff? This condition is incredibly unfair, illogical, and unreasonable. | | |
| 36. | **O'Neal Decl. ¶ 28.**<br><br>"It is also terrifying that I would have to self-quarantine and miss class in the event of an "outbreak" in and "adjacent" community. The University has provided zero explanation of this, and it poses an immediate threat to my academic performance and career where Delta is circulating at high levels throughout Los Angeles where LMU is located and I might not be able to attend classes – which are not provided online – because of an "outbreak" in and "adjacent" community." Is an "outbreak" a positive test down the street, or is it actual illness? Is it a lowgrade case, or severe symptoms or hospitalization? How frequently will my learning be interrupted due to COVID-19 cases *off campus?*" | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant speculates that she faces an "immediate threat to [her] academic performance and career" from a situation which may, or may not, occur, as Declarant notes ("I *would have to*….in the event of an outbreak."). Declarant also speculates that she "might not be able to attend classes," which is again based on nothing more than conjecture.<br><br>***Hearsay.*** FRE 801, 805. Declarant is summarizing out-of-court statements, which is inadmissible hearsay.<br><br>***Improper Lay Opinion.*** FRE 701. Declarant offers testimony about virology and spread of COVID-19, which is outside the | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Riley O'Neal ("O'Neal Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | | bounds of permissible lay testimony. | |
| **37.** | **O'Neal Decl. ¶ 29.**<br><br>"Most of my friends do not want to get the vaccine, but feel forced by the University to get it. Even though I try not to involve myself in the personal health decisions of my friends, when my friends have said this, I have told them it is possible to get an exemption; however, many feel the alternative to vaccination – masking, testing, distancing, forced quarantine, isolation – is just as bad if not worse, and do not want to be singled out like that. They are getting or have gotten vaccinated to avoid the hurdles that I have already experienced and to try and complete their education without any gaps or complications." | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant lacks a foundation for her testimony that most of her friends do not want to get vaccinated, and that many feel "masking, testing, distancing, forced quarantine, isolation – is just as bad" as getting vaccinated. She further speculates that her friends have gotten vaccinated or are planning to do so "to avoid the hurdles that I have already experienced and to try and complete their education without any gaps or complications." The entirety of this testimony is speculative.<br><br>***Hearsay.*** FRE 801, 805. Declarant is summarizing out-of-court statements, which is inadmissible hearsay.<br><br>***Improper Lay Opinion.*** FRE 701. Declarant offers testimony about virology and spread of COVID-19, which is outside the | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Riley O'Neal ("O'Neal Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | | bounds of permissible lay testimony. | |
| **38.** | **O'Neal Decl. ¶ 30.** "I am really grateful that my medical exemption was accepted, but I am extremely anxious and fearful about this upcoming school year. I do not want to test at least twice a week. I do not want to live apart from my friends, especially in an "unvaccinated-only" dorm, where people on campus can direct their anger directly at us. I do not want to delay my academic progress by taking a semester off, especially in the School of Film, but I am also scared that I am going to have issues with professors and peers who appear to be pro-vaccination and will know that I am not, thanks to LMU's policy. I do not want to miss out on any part of my college experience because I cannot receive a vaccine, even where I am healthy and where, conversely, people who can get vaccinated are granted access, even though they might *not* be healthy and can spread the virus and be an even greater threat to the health and safety of our community." | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant lacks a foundation for her testimony, and speculates extensively, that she will suffer extensive untoward consequences as a result of LMU's policies. Declarant speculates that she will "have issues" with professors and peers who "appear" to be in favor of vaccination, and speculates that they will "know that [Declarant] is not." None are grounded in reality, and all are speculative. ***Improper Lay Opinion.*** FRE 701. Declarant offers testimony about virology and spread of COVID-19, which is outside the bounds of permissible lay testimony. | [__] **Sustained** [__] **Overruled** |

## IV.   OBJECTIONS TO THE DECLARATION OF DR. PAUL ALEXANDER

31

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| 39. | **Alexander Decl. ¶ 2.** <br><br> I am an expert in the field of epidemiology and evidence-based medicine and have published many articles in peer-reviewed journals on these subjects. I am also a former professor at McMaster University in evidence-based medicine; former COVID pandemic advisor to WHO-PAHO in Washington, D.C. (2020); and a former senior advisor on COVID pandemic policy at the U.S. government's Department of Health and Human Services (HHS) in Washington, D.C. | ***Lacks Foundation and Speculation.*** FRE 602, 701.  Declarant lacks a foundation for his statement that he is an "expert in the field of epidemiology and evidence-based medicine." Declarant offers nothing about his specialized knowledge, skill, experience, training or education on the matters he proffers himself to be an expert in.  Alexander is not a medical doctor, and it is widely reported that Alexander "touted" examples of forcing CDC officials to "bow[] to his pressure" to advance political goals ahead of the 2020 election. *See, e.g.,* https://www.washingtonpost.com/health/2021/04/09/cdc-covid-political-interference/. <br><br> ***Inadmissible Expert Testimony.*** FRE 702.  Alexander holds himself out to be an expert, but that is far from the case.  Alexander lacks sufficient background, training, and experience in the field of his purported expertise.  Aside from Alexander's lack of foundation and unsupported assertions in the Declaration, extensive documentation in the public record, which the Court may take judicial notice of, call into question Alexander's reliability, whether his opinions are the product of reliable principles and methods, whether the testimony is relevant and reliable, and whether the probative value of Alexander's "opinions" is outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time. *See, e.g.,* https://www.washingtonpost.com | [__] **Sustained** <br><br> [__] **Overruled** |

32

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | Evidence at Issue | LMU's Objection | Ruling |
| | | /health/2021/04/09/cdc-covid-political-interference/ (describing efforts to manipulate CDC reports); *see also* https://www.politico.com/news/2020/12/16/trump-appointee-demanded-herd-immunity-strategy-446408 (describing Alexander's strategy for mass infections to gain herd immunity).<br><br>The admissibility of expert testimony is governed by FRE 702 and the principles articulated by the United States Supreme Court in *Daubert* and its progeny. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).  These principles require that the court "act as gatekeeper and to assure the reliability of proffered expert testimony before admitting" any expert testimony, regardless of whether it is scientific or not. *Samuels v. Holland Am. Line-USA*, 656 F.3d 948, 952 (9th Cir. 2011) (internal quotations omitted). This gatekeeper role "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.<br><br>The Ninth Circuit has identified six non-exclusive factors as guidelines for a trial court's assessment of proposed expert testimony pursuant to Fed. R. Evid. 702 and the further standards announced in *Daubert*: (1) "[w]hether the opinion is | |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | Evidence at Issue | LMU's Objection | Ruling |
| | | based on scientific, technical, or other specialized knowledge"; (2) "[w]hether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue"; (3) "[w]hether the expert has appropriate qualifications -- i.e., some special knowledge, skill, experience, training or education on the subject matter"; (4) "[w]hether the testimony is relevant and reliable"; (5) "[w]hether the methodology or technique the expert uses 'fits' the conclusions"; and (6) "[w]hether the probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); see also Fed. R. Evid. 702(b)-(d) (Expert testimony is admissible only where (1) "the testimony is based on sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert has reliably applied the principles and methods to the facts of the case."). The admissibility of expert testimony is a preliminary question for the Court. *See* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified . . . [i]n so deciding, the court is not bound by evidence rules, except those on privilege.") A district court must be satisfied that the proposed expert testimony will assist the jury, before allowing consideration of such | |

34

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | Evidence at Issue | LMU's Objection | Ruling |
| | | testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-49 (1999). The trial court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. In that regard, "[t]he subject of an expert's testimony must be specialized knowledge, which connotes more than subjective belief of unsupported speculation." *Samuels*, 656 F.3d at 952. Moreover, an expert may not offer any opinion that amounts to a legal conclusion. *Mukhtar v. California State Univ.*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002), amended by, 319 F.3d 1073 (9th Cir. 2003), overruled on other grounds, *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 467 (9th Cir. 2014).<br><br>The party offering expert testimony has the burden of establishing its admissibility. *Bldg. Indus. Ass'n of Washington v. Washington State Bldg. Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012); *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) ("The party offering the expert bears the burden of establishing that Rule 702 is satisfied."). | |
| 40. | **Alexander Decl. ¶ 3.**<br><br>While there were a lot of unknowns upon the initial this | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant lacks a foundation for his statements regarding "ample data" which "should be guiding scientists and | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

35
LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | outbreak of the SARS-CoV-2 virus, now, over 18 months into dealing with this novel coronavirus, there is ample data available that should be guiding scientists and public health authorities alike in how to best deal with the reality that COVID-19 is amongst us and will continue to be a factor in American life for the foreseeable future. | public health authorities alike." The entirety of this paragraph is speculative.<br><br>***Inadmissible Expert Testimony***.<br>FRE 702.  None of the testimony offered here is relevant or reliable.  Moreover, the testimony's probative value is substantially outweighed by the risk of undue prejudice and confusing the issues.  The testimony is nothing more than a "subjective belief of unsupported speculation."  *Samuels*, 656 F.3d at 952. | |
| 41. | **Alexander Decl. ¶ 5**<br><br>First of all, I strongly advise against mass dissemination of the COVID-19 vaccines. I am deeply concerned about its selection pressure effect, and indeed the potential for longer-term | ***Lacks Foundation and Speculation.***  FRE 602, 701.  Declarant lacks a foundation for his statements regarding Emergency Use Authorization of vaccines, the process for a "fully biologically licensed vaccine," and the potential impacts of "longer-term chronic effects (if any) on humans."<br><br>***Inadmissible Expert Testimony***.<br>FRE 702.  None of the testimony offered here is relevant or reliable.  Moreover, the testimony's probative value is substantially outweighed by the risk of undue prejudice and confusing the issues.  The testimony is nothing more than a "subjective belief of | [___]<br>**Sustained**<br><br>[___]<br>**Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | chronic effects (if any) on humans. These 'Emergency Use' Authorized vaccines do not meet the criteria for a fully biologically licensed vaccine, which requires years of efficacy and safety data. | unsupported speculation." *Samuels*, 656 F.3d at 952. This is *precisely* the type of speculation which *Daubert* was intended to curb. | |
| 42. | **Alexander Decl. ¶ 6** <br><br> We are already witnessing some worrying problems that we do not typically see with vaccines which include serious reactions and even deaths. Alain Townsend explains the potential risks: "The interaction between ACE2 and the Receptor Binding Domain [RBD] of the Spike protein is high affinity (-10 nM), equivalent to many monoclonal antibodies. As | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant lacks a foundation for his statements regarding "worrying problems" and what is "typically see[n] with vaccines which include serious reactions and even death." <br><br> ***Inadmissible Expert Testimony***. FRE 702. None of the testimony offered here is relevant or reliable. Moreover, the testimony's probative value is substantially outweighed by the risk of undue prejudice and confusing the issues. The testimony is nothing more than a "subjective belief of unsupported speculation." *Samuels*, 656 F.3d at 952. Additionally, the testimony is nothing more than a recitation of obscure terminology meant to masquerade as competent, relevant evidence. <br><br> ***Hearsay.*** FRE 801, 805. Declarant is summarizing Alain Townsend's out-of-court statements, which | [__] **Sustained** <br><br> [__] **Overruled** |

37

LMU'S OBJECTIONS IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | such, the association of ACE2 with the Spike protein is likely to be long lived, and is expected to result in ACE2 entering antigen presenting cells associated with the Spike protein on viral particles or vaccines. This may be enhanced by Fc mediated uptake via Fc Receptors once an antibody response to the spike has occurred, and may set up conditions for intense presentation of ACE2 epitopes to T and B cells, aided by strong T-cell help from epitopes derived from the attached Spike or other viral proteins. This may be enough to break self-tolerance to ACE2. In principle, there | is inadmissible hearsay. Declarant (and Plaintiffs) offer nothing in terms of who Townsend is or why he is a reliable source of information, why his supposed findings and observations are relevant or reliable, or anything else which fits these out-of-court statements offered for the truth of the matter asserted into an exclusion to the rule against hearsay. | |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | may be protean downstream effects of an auto-immune response to ACE2. ACE2 expression in lung, heart and kidney would lead to inflammation at those sites. In addition, loss of local ACE2 activity may be associated with increased activity of angiotensin II through the AT2 type I receptors in the lung, that are thought to be involved in initiating inflammation. Reduced ACE2 activity has been linked to increased thrombosis, and a thrombotic tendency has been described in severe Covid-19 disease. Autoantibodies to ACE2 have been described associated with vasculopathies including | | |

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | pulmonary hypertension." | | |
| 43. | **Alexander Decl. ¶ 7**<br><br>My concern about widespread use of the currently available vaccines rests on two main pillars, safety and the implications of viral mutations as they reduce vaccine effectiveness. Looking further into Emergency Trial data that is publicly available we note that according to the Federal Food, Drug, and Cosmetic Act (FD&CAct), unapproved drugs are allowed for emergency use but only if other viable treatments are unavailable. The fact that there were already viable and effective treatments and | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant lacks a foundation for his statements about EUA, what the Federal Food, Drug, and Cosmetic Act requires, whether there are, in fact, viable and effective treatments and therapeutics for COVID-19, and what the course of vaccine trials was, compared to what it supposedly *should have* been. The entirety of the testimony is speculative.<br><br>***Inadmissible Expert Testimony.*** FRE 702. None of the testimony offered here is relevant or reliable. Moreover, the testimony's probative value is substantially outweighed by the risk of undue prejudice and confusing the issues. The testimony is nothing more than a "subjective belief of unsupported speculation." *Samuels*, 656 F.3d at 952.<br><br>***Hearsay.*** FRE 801, 805. Declarant is summarizing Alain Townsend's out-of-court statements, which is inadmissible hearsay. Declarant (and Plaintiffs) offer nothing in terms of who Townsend is or why he is a reliable source of information, why his supposed findings and observations are relevant or reliable, or anything else which fits these out-of-court statements offered for the truth of the matter asserted into an exclusion to the rule against hearsay. | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|-----|------------------------------------------------------------------------------------|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | therapeutics for Covid-19, then this should have prevented EUAs for the vaccines. But regardless of this, these vaccines were approved for EUA based on data that spanned only 6-7 months, when the vaccine trials that have been approved prior have required a minimum of 6-7 years' (or longer) worth of investigation and data, both for efficacy and safety. | | |
| **44.** | **Alexander Decl. ¶ 8.** There have been situations wherein children were administered vaccines in the past for other illnesses and they have died unnecessarily. This includes, for example, the vaccine for Dengue fever. | ***Lacks Foundation and Speculation.*** FRE 602, 701.  Declarant lacks a foundation for his statements about administering vaccinations for viruses resulting in "unnecessar[y]" child deaths, his statements about the Dengue fever vaccine and its administration, and what the correlation is between supposed observations about the Dengue fever vaccine and the COVID vaccines.<br><br>***Inadmissible Expert Testimony.*** FRE 702.  None of the testimony offered here is relevant or reliable.  Moreover, the testimony's probative value is substantially | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

41

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | Administration resulted in severe illness and death. This alarmed some scientists, because the dengue virus is unusual: "A first infection is rarely fatal, but a second one with a different virus type can lead to much more serious disease, because of what is called antibody-dependent enhancement (ADE), in which the immune response to the first virus amplifies the effect of the second type. Scott Halstead, a retired dengue expert formerly at the Uniformed Services University of the Health Sciences in Bethesda, Maryland, argued that dengue vaccines...should not be given to | outweighed by the risk of undue prejudice and confusing the issues.  The testimony is nothing more than a "subjective belief of unsupported speculation." *Samuels*, 656 F.3d at 952.<br><br>***Hearsay.***  FRE 801, 805. Declarant is summarizing Scott Halstead's's out-of-court statements, which is inadmissible hearsay. | |

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | children never infected with dengue." Similar 'pathogenic priming' could occur in children, but of course we have no way of knowing one way or the other since the vaccine has not been tested for a long enough period of time and so true and reliable safety data are unavailable for both adults and children. | | |
| 45. | By forestalling and curbing viral infections, vaccines do indeed show promise when they have been studied extensively and their potential adverse effects have been collated and determined and this can only accomplished with the use of appropriate sample populations and | ***Lacks Foundation and Speculation.*** FRE 602, 701.  Declarant lacks a foundation for his statements about administering vaccinations for viruses and the supposed "issues" with "inferr[ing]" data.  Declarant lacks a foundation for his statements about polio vaccine, time to develop the same, and "devastating consequences" arising from when "mistakes are made," including the "catastrophe for children" supposedly occurring in 1955.<br><br>***Inadmissible Expert Testimony***. FRE 702.  None of the testimony offered here is relevant or reliable.  Moreover, the testimony's probative value is substantially outweighed by the risk of undue prejudice | [__] **Sustained** <br><br> [__] **Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|-----|-------------------|------------------|--------|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | over a meaningful period of time (at least 2-3 years or often longer). Longterm safety of a vaccine or any medication cannot be inferred from data derived from even the largest of sample sizes without testing over time. And using this type of approach, the risk-reward ratios have been tallied and the overall benefits revealed. Polio, a crippling and deadly disease has been managed/prevented effectively by the polio vaccine. Yet this vaccine took almost 20 years to develop after much study and the performance of sometimes tedious work along with good scientific methodologies. There are also devastating | and confusing the issues.  The testimony is nothing more than a "subjective belief of unsupported speculation."  *Samuels*, 656 F.3d at 952. | |

44

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | consequences when mistakes are made; for example, the tainted polio vaccine in 1955 comes to mind and the catastrophe for children that ensued. | | |
| 46. | **Alexander Decl. ¶ 10**<br><br>Most concerning is the vaccinating of individuals currently infected with or recovered from COVID-19. It is not only potentially unsafe, but I can confidently argue it is definitively unsafe to indiscriminately vaccinate the recently or currently infected. Mass vaccination is contrary to the Hippocratic dictum of "Primum Non Nocere." I make these statements based upon the available scientific | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant lacks a foundation for his statements that it is "definitively unsafe to indiscriminately vaccinate the recently or currently infected." He lacks a foundation for the statement that mass vaccination runs contrary to Hippocratic dictum, and fails to establish a foundation about what "available scientific data" he is relying upon. Declarant additionally lacks any foundation for his statement that "vaccine mandates are counter to the public interest and detrimental to the health of [University's] students."<br><br>***Inadmissible Expert Testimony***.<br>FRE 702. None of the testimony offered here is relevant or reliable. No sources are stated aside from vague "available scientific data," which, the available data directly counters Declarant's assertions. Moreover, the testimony's probative value is substantially outweighed by the risk of undue prejudice and confusing the issues. The testimony is nothing more than a "subjective belief of unsupported | [__] **Sustained**<br><br>[__] **Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | data and not on any emotional appeal. This is a matter of utmost importance. It is imperative for the sake of public health that the scientific community engage in a debate over the objections I raise to indiscriminate, mass vaccination and that policy makers to use real science as the benchmark for any further present and future decision-making. University vaccine mandates are counter to the public interest and detrimental to the health of its students. | speculation." *Samuels*, 656 F.3d at 952. | |
| 47. | **Alexander Decl. ¶ 11.** Rather, use of the currently available (but unapproved) vaccines should be limited to those actually endangered by | ***Lacks Foundation and Speculation.*** FRE 602, 701.  Declarant lacks a foundation for his statements about who should receive the vaccine and why the vaccine should be limited to them, in addition to lacking any foundation for the testimony about "the most appropriate and pressing need in society at the present time." <br><br> ***Inadmissible Expert Testimony.*** | [__] **Sustained** <br><br> [__] **Overruled** |

46

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | prospective infection with SARS-CoV2. The most appropriate and pressing need in society at the present time is to protect the vulnerable, the elderly with conditions and those in extended care, assisted-living facilities. | FRE 702.  None of the testimony offered here is relevant or reliable.  No sources on which Declarant relies for this wildly speculative testimony are stated.  Moreover, the testimony's probative value is substantially outweighed by the risk of undue prejudice and confusing the issues.  The testimony is nothing more than a "subjective belief of unsupported speculation." *Samuels*, 656 F.3d at 952. | |
| 48. | **Alexander Decl. ¶ 13.** Natural immunity provides for the type of durable, robust, full, comprehensive protection needed, and is much more robust than immunity induced by vaccination alone. Researchers have shown that the components of immune memory (memory B cells, CD8+ T cells, and CD4+ T cells) in persons who had | *Lacks Foundation and Speculation.*  FRE 602, 701.  Declarant lacks a foundation for his statements about "natural immunity" and how it is supposedly "much more robust than" vaccination-induced immunity.  Declarant lacks a foundation and speculates about various research, immunity length, and other related topics.  It is speculation, nothing more. <br><br> *Inadmissible Expert Testimony*.  FRE 702.  None of the testimony offered here is relevant or reliable.  No sources on which Declarant relies for this wildly speculative testimony are stated, and the testimony boils down to unsupported platitudes and jargon.  Moreover, the testimony's probative value is substantially outweighed by the risk of undue prejudice and confusing the issues.  The testimony is | [__] **Sustained** <br><br> [__] **Overruled** |

47

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | been exposed to SARS-CoV-2 persist for some time post-infection. Some have argued immunity may last for months, years, decades, or even a lifetime. This important immunity research has emerged by Shane Crotty's lab in La Jolla, California, Lauren Rodda's group, as well as evidence in Iceland and the U.S. For example, researchers found antibodies even in milder cases, and that there were antibodies with the capacity to neutralize the virus and antibodies specific to the spike protein. They also reported that the production of antibodies was greater in more severe disease. The NIH reports that "This long-term | nothing more than a "subjective belief of unsupported speculation." *Samuels*, 656 F.3d at 952.<br><br>***Hearsay.*** FRE 801, 805. Declarant is recounting and quoting extensive out-of-court statements and relying on such for the truth of the matter asserted. This is inadmissible hearsay. | |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | immune protection involves several components. Antibodies—proteins that circulate in the blood—recognize foreign substances like viruses and neutralize them. Different types of T cells help recognize and kill pathogens. B cells make new antibodies when the body needs them. All of these immune-system components have been found in people who recover from SARS-CoV-2, the virus that causes COVID-19." Thus, all persons recovered from infection should be vaccine exempt. | | |
| 49. | **Alexander Decl. ¶ 14**<br><br>We know that T-cell immunity specific to SARS- | *Lacks Foundation and Speculation.* FRE 602, 701.  Declarant lacks a foundation for his statements about T-cell immunity in relation to SARS, re-infection, "natural immunity" and how it is "very real, persistent and potent."  Declarant lacks a | [__] **Sustained**<br><br>[__] **Overruled** |

49

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | CoV-1 (SARS in 2003) has lasted for decades, at least 17 years. This T-cell longevity may well be the same for current SARS-CoV-2 infection. The body can `remember' SARS-CoV-2 and besides T-cell memory, so-called memory B cells can also, on reexposure to the (previously seen) pathogen, ramp up to produce antibodies to fight it. Importantly, Alba Grifoni and Crotty at the La Jolla Institute for Immunology in California even detected SARS-CoV-2-reactive CD4+ T cells (`helper cells') in approximately 40%-60% of 20 unexposed individuals, indicative of cross-reactive T-cell | foundation and speculates about various research, immunity length, and other related topics. It is speculation, nothing more.  ***Inadmissible Expert Testimony***.  FRE 702. None of the testimony offered here is relevant or reliable. No sources on which Declarant relies for this speculative testimony are stated, and the testimony boils down to unsupported jargon. The testimony's probative value is substantially outweighed by the risk of undue prejudice and confusing the issues. The testimony is nothing more than a "subjective belief of unsupported speculation." *Samuels*, 656 F.3d at 952.  ***Hearsay.*** FRE 801, 805.  Declarant is summarizing (supposedly) extensive out-of-court statements and relying on such for the truth of the matter asserted. This is inadmissible hearsay. | |

50
LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | recognition between circulating "common cold" coronaviruses and SARS-CoV-2. Importantly also, is the issue of re-infections in patients who had Covid-19, and it appears to be very rare, underscoring the idea that natural immunity is very real, persistent and potent. | | |
| 50. | **Alexander Decl. ¶ 15**<br><br>Further to the above, and in relation to the argument that people who have had prior infection do not require vaccination, research conducted by the National Institute of Allergy and Infectious Diseases (NIAID) provides support. In this study, blood | ***Lacks Foundation and Speculation.*** FRE 602, 701.  Declarant lacks a foundation for his statements about T-cell immunity, NIAID research and research results, SARS-and-COVID connections ("SARS…induced Covid-19"), mutations, and similar.  Declarant lacks a foundation and speculates about various research, immunity length, and other related topics.  It is speculation, nothing more.<br><br>***Inadmissible Expert Testimony.***<br>FRE 702.  None of the testimony offered here is relevant or reliable.  No sources on which Declarant relies for this speculative testimony are stated, and the testimony boils down to unsupported jargon.  The testimony's probative value is substantially | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | cell samples from 30 people who had contracted and recovered from Covid-19 prior to the emergence of virus variants were analyzed for immune function. The research showed that previously infected persons retain robust immunity. The study asked if CD8+ T cells in the blood of patients who had recovered from the initial wild type form of SARS CoV-2 induced Covid-19, recognized three SARS-CoV-2 variants: B.1.1.7, which was first detected in the United Kingdom; B.1.351, originally found in the Republic of South Africa; and B.1.1.248, initially seen in Brazil. These variants | outweighed by the risk of undue prejudice and confusing the issues.  The testimony is nothing more than a "subjective belief of unsupported speculation."  *Samuels*, 656 F.3d at 952.<br><br>***Hearsay.***  FRE 801, 805.<br>Declarant is summarizing (supposedly) extensive out-of-court statements and relying on such for the truth of the matter asserted.  This is inadmissible hearsay. | |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | Evidence at Issue | LMU's Objection | Ruling |
| | have mutations in the spike protein region that could make it less recognizable to neutralizing antibodies and T-cells (these made by the immune system's B cells following infection or vaccination). The NIAID reported that the CD8+ T cell remained active against the virus. NIH also reported similar research of the immune systems of more than 95% of people who recovered from Covid-19 had durable memories of the virus up to eight months after infection. Yet to reiterate, ongoing mutations of the virus have begun to render some of the vaccine-induced immunity less functional or nonfunctional with | | |

53

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | regard to some of the newer mutations (vaccine escape). | | |
| 51. | **Alexander Decl. ¶ 16**<br><br>Additionally, these B cells cross-communicate with the T-cells that produce a cadre of helper and killer cells that target the infectious organism. The B cells have short-lived responses measured in months while the T-cells are long-lived and survive over decades. Thus, the memory of the infection lives within the body for any future attacks from similar infectious agents. The current crop of mRNA vaccines, however, confer very narrow immunity because they are focused on a single target; the | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant lacks a foundation for his statements in their entirety. Declarant lacks a foundation for his statements about why influenza vaccination programs take place at certain times, why mass vaccination "may actually be counterproductive towards to goal of preventing outbreak," why "the notion that vaccinated persons cannot contract or spread infection is inaccurate," among other statements. It is pure speculation, nothing more.<br><br>***Inadmissible Expert Testimony***. FRE 702. None of the testimony offered here is relevant or reliable. No sources on which Declarant relies for this speculative testimony are stated, and the testimony boils down to unsupported non-sequiturs. The testimony's probative value is substantially outweighed by the risk of undue prejudice and confusing the issues, and is nothing more than a "subjective belief of unsupported speculation." *Samuels*, 656 F.3d at 952.<br><br>***Hearsay.*** FRE 801, 805. Declarant is summarizing (supposed) research and "ample evidence", all of which are out-of-court statements | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | Evidence at Issue | LMU's Objection | Ruling |
| | spike (S) protein. The science is well-founded based on the fact that the "Spike" itself provides the means of entry into the human body cell via the ACE-2 receptor, and thus if such entry is prevented, infection will not ensue. The logic is correct and valid at its core. However, and here is what the past year and recent events have revealed; the virus has started to mutate given selection pressures it encountered, and the variants are more infectious and are more transmissible than the former (wild-type) parental self. The mutations have occurred in the spike protein itself, the very target of the vaccine. Although | introduced for the truth of the matter asserted.  This is inadmissible hearsay. | |

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | 677 mutations have been observed in the United States alone, within the 30,000 nucleotides of the virus, most provide little value relating to transmission and virulence. These mutations are a direct result of the "selection pressure" exerted on the virus. Selection pressure is defined by the protective immunity encountered by the virus itself during its infectious raid on the human body. There is discussion that vaccinating a populace during a pandemic or when infection is elevated can drive the emergence of variants. This is the reason why influenza vaccine programs take place at the end of | | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | summer or early fall, and not during the peak influenza season. For this reason, the mass vaccination of a University population may actually be counterproductive towards to goal of preventing outbreak. Also, the notion that vaccinated persons cannot contract or spread infection is inaccurate. In fact, the opposite is true. Let me be clear, there is ample evidence that vaccinated persons are the driver behind the current uptick in COVID-19 cases because these cases are largely, if not wholly, attributable to variants that vaccine-conferred immunity does not protect against. | | |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| **52.** | **Alexander Decl. ¶ 17**<br><br>In addition, the RT-PCR test used to diagnose positive infections is not a suitable test; it is very flawed and inaccurate. Any cycle count (Ct) threshold (spin or amplification) above 20 to 24 is essentially detecting viral dust, fragments, old particles, non-culturable, non-viable, noninfectious virus. The CDC (and others) had set the CT at 40. This really means that over 90% of the "positives" are false positives in terms of being infectious. The viral load is basically zero, so little and of no consequence. This test is a pure disaster and a lie. | ***Lacks Foundation and Speculation.*** FRE 602, 701. Declarant lacks a foundation for his statements in their entirety. No foundation is offered for very serious allegations about inefficacy of tests, or how tests *should be conducted*. Declarant speculates that "the test is a pure disaster and a lie." The entirety of the testimony in the paragraph is Declarant's subjective opinions masquerading as junk science, at best.<br><br>***Inadmissible Expert Testimony***. FRE 702. None of the testimony offered here is relevant or reliable. No sources on which Declarant relies for this speculative testimony are stated, and the testimony boils down to unsupported non-sequiturs which amount to an indictment of the CDC and other public health authorities. The testimony's probative value is substantially outweighed by the risk of undue prejudice and confusing the issues, and is nothing more than a "subjective belief of unsupported speculation." *Samuels*, 656 F.3d at 952.<br><br>***Hearsay.*** FRE 801, 805. Declarant is summarizing (supposed) research and "ample evidence", all of which are out-of-court statements introduced for the truth of the matter asserted. This is inadmissible hearsay. | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | An "infection" is not a "case." Saying we have 10,000 new "cases" is false. A case is when someone has actual symptoms and is sick. This manipulation of words is meant to deceive. | | |
| 53. | **Alexander Decl. ¶ 18**<br><br>The University's policy of subjecting unvaccinated students to PCR testing serves no purpose and is setting those students up for additional purposeless — and likely harmful — measures. The vast majority of people who are infected do not have a serious problem with COVID, near 100%; 'infections' are not important and they are not a | ***Lacks Foundation and Speculation.*** FRE 602, 701.  Declarant lacks a foundation for his statements in their entirety.  No foundation is offered for his statements about the LMU's testing "serv[ing] no purpose, and . . .setting . . .students up for additional purposeless-and likely harmful-measures."  None of the statements have a foundation and all are speculative.<br><br>Additionally, the statements regarding "surveillance testing . . .serv[ing] as further propaganda" is entirely speculative and lacking in foundation.  Nothing supports these statements.<br><br>***Inadmissible Expert Testimony.***<br>FRE 702.  None of the testimony offered here is relevant or reliable.  No sources on which Declarant relies for this speculative testimony are stated, and the testimony boils down to unsupported non-sequiturs which amount to an indictment of the CDC and other public health authorities (e.g., | [__] **Sustained**<br><br>[__] **Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | serious problem. The PCR test with its high false positives impact these numbers, thus making interpretation of "cases" sub-optimal; one may test positive but have no symptoms or are mildly symptomatic with no real problematic sequelae. This represents the vast majority of instances, actually. What is of critical importance is not the fear that the media and television medical experts drive over 'infections', but rather it is the hospitalization, ICU use, and deaths that may result (in a minor portion of instances), again, not the number of infections. Given the behavior of public health | "surveillance testing" must be occurring because of "the behavior of public health authorities I have observed.") The testimony's probative value is substantially outweighed by the risk of undue prejudice and confusing the issues, and is nothing more than a "subjective belief of unsupported speculation." *Samuels*, 656 F.3d at 952.<br><br>***Hearsay.***  FRE 801, 805.<br>Declarant is summarizing (supposed) research and "ample evidence", all of which are out-of-court statements introduced for the truth of the matter asserted.  This is inadmissible hearsay. | |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | authorities I have observed on a national level and at the state and local level throughout the country, it would not surprise me if the sole purpose of this "surveillance testing" is to serve as further propaganda to support additional lockdowns, mass-vaccination, and other measures that do nothing to enhance or protect the public health. | | |
| 54. | **Alexander Decl. ¶ 19** Covid-19 spread is so exceedingly rare in asymptomatic persons as to have virtually no impact in the grand scheme. In an article published in Nature Communications (November 2020) that studied 10 million eligible | ***Lacks Foundation and Speculation.*** FRE 602, 701.  Declarant lacks a foundation for his statements in their entirety.  He offers nothing to support the astonishing claim that "Covid-19 spread is so exceedingly rare in asymptomatic persons as to have virtually no impact in the grand scheme." It is speculation at its finest. ***Inadmissible Expert Testimony***. FRE 702.  None of the testimony offered here is relevant or reliable.  No sources on which Declarant relies for this speculative testimony are stated, and the testimony boils down to statements which are plainly countered by the great weight of public | [__] **Sustained** [__] **Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | persons, it was demonstrated that asymptomatic spread was not merely rare but in fact, does not appear to happen at all. Not one instance was found in the study whereby researchers reported that there were positive tests emerging even amongst close contacts of asymptomatic cases in this sample of 10 million. | health authorities across the globe.  The testimony's probative value is substantially outweighed by the risk of undue prejudice and confusing the issues, and is nothing more than a "subjective belief of unsupported speculation." *Samuels*, 656 F.3d at 952.<br><br>*Hearsay.*  FRE 801, 805.<br>Declarant is summarizing (supposed) research and findings, all of which are out-of-court statements introduced for the truth of the matter asserted.  This is inadmissible hearsay. | |
| 55. | **Alexander Decl. ¶ 20**<br><br>We all know of the relationship between how much virus you have in the respiratory tract or lungs and the amount of symptoms you have. The more well you are, the less likely you are to infect someone. | *Lacks Foundation and Speculation.*  FRE 602, 701.  Declarant lacks a foundation for his statements in their entirety.  He offers no foundation for his testimony about "relationship between how much virus you have in the respiratory tract or lungs and the amount of symptoms you have."  Indeed, it must be obvious because, as Declarant avers, "[w]e all know of the relationship."  This lacks any foundation, and is purely speculative.  The additional statements in the paragraph—that those who are asymptomatic do not spread COVID, that those who are asymptomatic are not infectious, that a "false narrative" "cost | [__]<br>**Sustained**<br><br>[__]<br>**Overruled** |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | This is pure immunology 101 and virology 101. What is being imparted on people about "asymptomatic spread" is pure lies. A healthy person does not infect; an asymptotic person does not spread. If you have little or no symptoms, you are not infectious. The false narrative of "asymptomatic spread" was used to lock down our societies and cost many lives. Even Dr. Anthony Fauci stated early on in 2020 that asymptomatic spread is not a driver of pandemics and is rare, if it Health Organization is on record stating this as well. I state this to underscore my point that the University's focus | many lives," that LMU's "focus on unvaccinated students is not based on science," and that LMU's policies are "purely discriminatory" unless they focus on "sick persons, only," are foundation-less, and speculation.<br><br>***Inadmissible Expert Testimony.*** FRE 702.  None of the testimony offered here is relevant or reliable.  The testimony boils down to emotional platitudes based on unsupported and uncited assertions, and appeals to "we all know" and political dislikes.  This is not reliable, competent expert evidence or opinion.  The testimony's probative value is substantially outweighed by the risk of undue prejudice and confusing the issues, and is nothing more than a "subjective belief of unsupported speculation." *Samuels*, 656 F.3d at 952.<br><br>***Hearsay.*** FRE 801, 805. Declarant is summarizing (supposed) out-of-court statements from Dr. Fauci and the WHO, introduced for the truth of the matter asserted.  This is inadmissible hearsay. | |

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION

| No. | Specific Objections to the Declaration of Dr. Paul Alexander ("Alexander Decl.") | | |
|---|---|---|---|
| | **Evidence at Issue** | **LMU's Objection** | **Ruling** |
| | on unvaccinated students is not based on science. Any measures to be implemented to protect the campus community should be focused on sick persons, only. Anything else is purely discriminatory. | | |

RESPECTFULLY SUBMITTED,

HOLLAND & KNIGHT LLP

/s/  *Vito A. Costanzo*

Vito A. Costanzo
Kristina S. Azlin
Stacey H. Wang
Kelsey M. Falkenberg

*Attorneys for Defendant,*
*Loyola Marymount University*

LMU'S OBJECTIONS IN OPPOSITION TO
PLAINTIFFS' EX PARTE APPLICATION