SHEPPARD MULLIN RICHTER & HAMPTON LLP
KENT R. RAYGOR, Cal. Bar No. 117224
kraygor@sheppardmullin.com
VALERIE E. ALTER, Cal. Bar No. 239905
valter@sheppardmullin.com
GIAN A. RYAN, Cal. Bar No. 334599
gryan@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6055
Telephone:   (310) 228-3700
Facsimile:   (310) 228-3701

SHEPPARD MULLIN RICHTER & HAMPTON LLP
ZACHARY J. GOLDA, Cal. Bar No. 327532
zgolda@sheppardmullin.com
650 Town Center Drive, 10th Floor
Costa Mesa, California  92626
Telephone:   (714) 513-5100
Facsimile:   (714) 513-5130

Attorneys for Defendants
MUNTU DAVIS, M.D. and BARBARA
FERRER, PhD

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RYAN KHANTHAPHIXAY and RILEY O'NEAL,<br><br>              Plaintiffs,<br><br>       v.<br><br>LOYOLA MARYMOUNT UNIVERSITY; MUNTU DAVIS, in his official capacity as Public Health Officer for Los Angeles County; and BARBARA FERRER, in her official capacity as Director of the Los Angeles County Department of Public Health,<br><br>              Defendants. | Case No. 2:21-cv-06000 AB (KSx)<br><br>**OPPOSITION OF DEFENDANTS MUNTU DAVIS, M.D. AND BARBARA FERRER, PhD TO PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>**[Request for Judicial Notice and Declaration of Robert Gilchick, M.D. submitted herewith under separate cover]**<br><br>Hearing<br>Date:          TBD<br>Time:          TBD<br>Courtroom:   7B, Hon. André Birotte Jr. |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................7

II.     PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF
        AGAINST THE COUNTY DEFENDANTS.................................................8

        A.   Plaintiffs Failed To Comply With Local Rule 7-19 And This
             Court's Standing Order. .................................................................8

        B.   Plaintiff Are Not Entitled To Injunctive Relief Of Any Kind
             Against The County Defendants. ...................................................9

        C.   Plaintiffs Are Not Likely To Succeed On The Merits. ...........................10

             1.   The County Played No Role In The LMU Policies.....................10

             2.   Plaintiffs' Claims Fail In Their Entirety Because Even If
                  The County Defendants Are Properly Joined Here, Any
                  Actions By The County Defendants Are A Constitutional
                  Exercise Of Emergency Powers. ...................................................12

             3.   Plaintiffs' Second Claim For Violation Of The Free
                  Exercise Clause Of The First Amendment And Article 1, § 4
                  Of The California Constitution Fails. ..........................................12

             4.   Plaintiffs' First Claim For Violation Of Their Rights To
                  Equal Protection Under The Federal And California
                  Constitutions Fail.................................................................14

             5.   Plaintiffs' Third Claim For Violation Of The Fourth
                  Amendment Is Meritless.................................................................16

        D.   Plaintiffs' Have Not Established Irreparable Harm. ...............................19

        E.   The County's Interest In Protecting Public Health Outweighs
             Plaintiffs' Interests, And Denying The Injunction Is In The Public
             Interest.................................................................................20

III.    CONCLUSION ....................................................................................22

1

## TABLE OF AUTHORITIES

2

3

Page(s)

<u>Cases</u>

4

5

*Alliance For The Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) ........................................................................ 10

6

7

*Angelotti Chiropractic, Inc. v. Baker*
    791 F.3d 1075 (9th Cir. 2015) ........................................................................ 15

8

9

*Aviles v De Blasio*
    No. 20 Civ. 9829 (PGG), 2021 WL 796033 (S.D.N.Y. Mar. 2, 2021)
        ......................................................................................................16, 17, 18

10

11

*Best Supplement Guide, LLC v. Newsom, et al.*
    No. 2:20-cv-00965-JAM-CKD, 2020 WL 2615022 (E.D. Cal. May 22,
    2020) ................................................................................................................ 12

12

13

*Brach v. Newsom*
    No. 2:20-cv-06472-SVW-AFM, 2020 WL 6036764 (C.D. Cal. Aug. 21,
    2020), *aff'd* No. 20-56291 (9th Cir. July 23, 2021) ................................ 12, 21

14

15

*Brown v. Bd. of Educ.*
    347 U.S. 483 (1954) ........................................................................................ 21

16

17

*Brown v. Smith*
    24 Cal. App. 5th 1135 (2018) .................................................................... 14, 15

18

19

*Castellucci v. JPMorgan Chase Bank, N.A.*
    No. 2:20-cv-04580-AB, 2021 WL 678685 (C.D. Cal. Jan. 7, 2021) .................. 9

20

21

*Catholic Charities of Sacramento, Inc. v. Sup. Ct.*
    32 Cal. 4th 527 (2004) .................................................................................... 13

22

23

*E. Bay Sanctuary Covenant v. Trump*
    950 F.3d 1242 (9th Cir. 2020) ........................................................................ 10

24

25

*Employment Div., Ore. Dept. of Human Res. v. Smith*
    494 U.S. 872 (1990) ................................................................................... 12, 13

26

27

*FCC v. Beach Commc'ns*
    508 U.S. 307 (1993) ........................................................................................ 15

28

*Garcia v. Google, Inc.*
  786 F.3d 733 (9th Cir. 2015) (en banc) ............................................................ 10

*Global Horizons, Inc. v. U.S. Dep't of Labor*
  510 F.3d 1054 (9th Cir. 2007) ........................................................................... 19

*Great N. Res., Inc. v. Coba*
  Case No. 3:20-cv-01866-IM, 2020 WL 6820793 (D. Or. Nov. 20, 2020) ........ 20

*Heineke v. Santa Clara University*
  965 F.3d 1009 (9th Cir. 2020) ........................................................................... 11

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*
  736 F.3d 1239 (9th Cir. 2013) ........................................................................... 19

*Hill v. Nat'l Collegiate Athletic Ass'n*
  7 Cal. 4th 1 (1994) ............................................................................................. 17

*In re iPhone Application Litig.*
  844 F.Supp.2d 1040 (N.D. Cal. 2012) ............................................................... 19

*Jacobson v. Commonwealth of Massachusetts*
  197 U.S. 11 (1905) ............................................................................................. 12

*Johnson v. University of San Diego*
  No. 10CV0504-LAB (NLS), 2011 WL 4345842 (S.D. Cal. Sept. 16, 2011) .... 10

*Kittle-Aikeley v Strong*
  844 F.3d 727 (8th Cir. 2016) ....................................................................... 17, 18

*Klaassen v. Trs. of Ind. Univ.*
  No. 1:21-CV-238 DRL, 2021 WL 3073926 (N.D. Ind. July 18, 2021) ....... 19, 20

*Nordlinger v. Hahn*
  505 U.S. 1 (1992) ............................................................................................... 14

*Nunn v. California*
  No. 18-cv-03862-WHO, 2018 WL 5722112 (N.D. Cal. Nov. 1 2018) ............. 10

*Prince v. Massachusetts*
  321 U.S. 158 (1994) ........................................................................................... 13

*Rawson v. Recovery Innovations, Inc.*
  975 F.3d 742 (9th Cir. 2020) ............................................................................. 11

*Rendish v. City of Tacoma*
    123 F.3d 1216 (9th Cir. 1997) ................................................................. 19

*RUI One Corp. v. City of Berkeley*
    371 F.3d 1137 (9th Cir. 2004) ................................................................. 15

*S. Bay United Pentecostal Church v. Newsom*
    141 S. Ct. 716 (2021) (Roberts, C.J., concurring) ................................. 12

*S. Bay United Pentecostal Church v. Newsom*
    959 F.3d 938 (9th Cir. 2020) ................................................................. 13

*Scott v. Cty. of San Bernardino*
    903 F.3d 943 (9th Cir. 2018) ................................................................. 16

*Sutton v. Providence St. Joseph Medical Center*
    192 F.3d 826 (9th Cir. 1999) ................................................................. 10

*Tandon v. Newsom*
    ___ U.S. ___, 141 S. Ct. 1294 (2021) ..................................................... 14

*United States v. Padilla-Diaz*
    862 F.3d 856 (9th Cir. 2017) ................................................................. 14

*Veronia Sch. Dist. 47J v. Acton*
    515 U.S. 646 (1995) .............................................................. 16, 17, 18, 19

*Whitlow v. California*
    203 F. Supp. 3d 1079 (S.D. Cal. 2016) ............................... 13, 15, 16

*Winter v. Natural Resources Defense Council, Inc.*
    555 U.S. 7 (2008) ................................................................... 9, 10, 19

*Wright v. Incline Village Gen. Improvement Dist.*
    665 F.3d 1128 (9th Cir. 2011) ............................................................... 15

Statutes

21 U.S.C. § 360bbb-3 ................................................................................ 10

42 U.S.C. § 1983 ...................................... 10, 13, 15, 16, 17, 18, 19, 20

Other Authorities

California Constitution Article 1, § 1 ........................................................ 10

California Constitution Article 1, § 4 .................................................. 10, 12

1

California Constitution Article 1, § 7(a)..........................................................10, 15

2

LOCAL RULE 7-19 .................................................................................7, 8

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## INTRODUCTION

Plaintiffs Ryan Khanthaphixay's and Riley O'Neal's ("**Plaintiffs**") *ex parte* application for a temporary restraining order and for an order to show cause re preliminary injunction must be denied as to Defendants Muntu Davis, M.D. and Barbara Ferrer, PhD of the Los Angeles County Department of Public Health (hereinafter the "**County Defendants**") for three reasons.

*First*, Plaintiffs have dispensed with the most basic notions of due process. They did not give the County Defendants any meaningful notice of their *ex parte*, or serve them with *ex parte* papers, as C.D. CAL. LOCAL RULE 7-19 and this Court's web-posted local rules https://www.cacd.uscourts.gov/honorable-andr%C3%A9-birotte-jr) require.  The County Defendants only learned about Plaintiffs' application by checking the docket for this case shortly before 11:00 a.m. on Thursday, August 5, 2021.  Adding further insult to injury, Plaintiffs' notice of motion misleadingly seeks an order "enjoining Defendant Loyola Marymount University from enforcing its 'Required COVID-19 Vaccination and Exemption Policy For Students', and all aspects thereof," making no mention of the County Defendants.  [ECF 18, at 2:5-7.]  Yet, Plaintiffs have submitted a proposed order that would enjoin the County Defendants.  [ECF 18-7, at 1:23-24.]  This alone is reason enough to deny Plaintiffs' *ex parte* application.

*Second*, Plaintiffs' lawsuit complains that COVID-19 mitigation policies at Loyola Marymount University ("**LMU**"), a private university, violate their constitutional rights.  It is black-letter law that state action is required for a constitutional claim such as those asserted by Plaintiffs here, and private universities generally are not state actors.  To avoid this obvious roadblock to their claims, Plaintiffs sued the County Defendants, but they *plead no facts and present no evidence* that the County Defendants were in any way involved in creating LMU's policies (the "**LMU Policies**"), and with good reason:  the County was not involved.

1  [*See Declaration of Robert Gilchick, M.D.*, ¶ 3, submitted concurrently herewith.]

2  The County Defendants should not be a party to this suit.

3       *Third*, even if the County Defendants were properly joined, Plaintiffs' claims

4  are meritless.  In the largest pandemic in a century—which has cost more than

5  600,000 American lives to date—Plaintiffs attempt to elevate a masking

6  requirement—at most a mild inconvenience—into a constitutional violation.  The

7  Court should see this case for what it is:  a request that this Court interfere with

8  COVID-19 mitigation policies recognized as appropriate by all levels of government

9  from the Centers For Disease Control and Prevention ("**CDC**") to local government,

10  based on purported evidence that is more political theater than science.  The *ex parte*

11  application for a temporary restraining order and for an order to show cause re

12  preliminary injunction should be denied.

13                                    **II.**

14  **PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF AGAINST**

15                    **THE COUNTY DEFENDANTS**

16  **A.**    **Plaintiffs Failed To Comply With Local Rule 7-19 And This Court's**

17           **Standing Order.**

18       This Court's LOCAL RULES require that an attorney seeking *ex parte* relief

19  "make reasonable, good faith efforts" to notify the other parties of the relief sought.

20  This Court's web page (https://www.cacd.uscourts.gov/honorable-andr%C3%A9-

21  birotte-jr) also states:  "[T]he moving party shall serve the opposing party by e-mail,

22  facsimile transmission or personal service and shall notify the opposing party that

23  opposition papers must be filed no later than 24 hours (or one court day) following

24  such service."  Plaintiffs do not provide any evidence having effected any such

25  service on the County Defendants, nor of a "reasonable, good faith effort[]" to

26  notify the County Defendants.  They claim to have called the general phone number

27  for the County's public health department, and sent an e-mail to

28  media@ph.lacounty.gov, the public health department's media arm, but that can

hardly be considered reasonable, especially when they know that the undersigned counsel represents defendants Muntu Davis, M.D. and Barbara Ferrer, PhD of the County in a parallel case matter filed by the same attorneys and involving the Los Angeles Unified School District.[1]  Moreover, Plaintiffs provide no evidence that they served the County Defendants with papers.  The County Defendants only learned of Plaintiffs' *ex parte* application by checking the docket at 11:00 a.m. the day after it was filed and the day this opposition was due.  This is reason alone to deny Plaintiffs' *ex parte* application.

**B.** **Plaintiff Are Not Entitled To Injunctive Relief Of Any Kind Against The County Defendants.**

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Castellucci v. JPMorgan Chase Bank, N.A.*, No. 2:20-cv-04580-AB (KSx), 2021 WL 678685, at *1 (C.D. Cal. Jan. 7, 2021) (quoting *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)  Under the Ninth Circuit's "sliding scale approach":

> [T]he elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.  For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits.  This circuit has adopted and applied a version of the sliding scale approach under which a preliminary injunction could issue where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.

---

[1] *Guilfoyle, et al. v. Beutner, et al.*, No. 2:21-cv-05009 VAP (MRWx), filed on June 19, 2021.

*Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1136-37 (9th Cir. 2011) (cleaned up).  "When the government is a party, the last two factors (equities and public interest) merge."  *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1271 (9th Cir. 2020).  Where a Plaintiff does not show a likelihood of success on the merits, the Court need not reach any other *Winter* factors.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

## C.   <u>Plaintiffs Are Not Likely To Succeed On The Merits.</u>

Plaintiffs assert claims against the County Defendants for:  (1) violation of  42 U.S.C. § 1983 (Equal Protection clause of the Fourteenth Amendment); (2) violation of 42 U.S.C. § 1983 (First Amendment, Free Exercise Clause) and Article 1, Section 4 of the California Constitution; (3) 42 U.S.C. § 1983 (Fourth Amendment); (4) violation of 21 U.S.C. § 360bbb-3; (5) deprivation of equal protection under Article 1, Section 7(a) of the California Constitution; and (6) deprivation of privacy under Article 1, Section 1 of the California Constitution.  Plaintiffs seek injunctive relief in connection with their first, second, and third claims.  Each of those claims is meritless.

### 1.   <u>The County Played No Role In The LMU Policies.</u>

Only state actors can be liable for claims brought under either the United States or California Constitutions.  *Nunn v. California*, No. 18-cv-03862-WHO, 2018 WL 5722112, at *3 (N.D. Cal. Nov. 1 2018) (holding that plaintiffs' claim against Chase Bank for violation of the federal or California constitutions must be dismissed because no state action was implicated by Chase's conduct); *Johnson v. University of San Diego*, No. 10CV0504-LAB (NLS), 2011 WL 4345842, at **7-8 (S.D. Cal. Sept. 16, 2011) (holding that plaintiff's claims for racial discrimination against a private university in violation of the federal and California constitutions must be dismissed due to the absence of state action).  Absent special circumstances, private universities are not state actors.  *Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 835 (9th Cir. 1999) ("[P]rivate parties are not generally acting

under color of state law.  In order for private conduct to constitute governmental action, something more must be present." (cleaned up)); *see also Rawson v. Recovery Innovations, Inc*., 975 F.3d 742, 747 (9th Cir. 2020) ("The determination of whether a nominally private person or corporation acts under color of state law is a matter of normative judgment, and the criteria lack rigid simplicity." (cleaned up)).  The mere fact that a private university follows governmental guidelines does not render it a state actor, nor does it render the government that promulgated the guidelines responsible for the actions of the private university.  *Heineke v. Santa Clara University*, 965 F.3d 1009, 1012 (9th Cir. 2020) (holding that a private university's receipt of government funds or compliance with generally applicable laws was not sufficient to convert private conduct into state action).

It is undisputed the LMU is a private university, which severely limits Plaintiffs' ability to sue LMU for constitutional violations.  Plaintiffs attempt to avoid this conclusion by asserting that the County was involved in developing the LMU Policies.  [ECF 18, at 7:16-18.]  Plaintiffs, however, present no evidence in support of this claim and plead no specific facts to allege the County's involvement because they cannot.[2]  [*See Declaration of Robert Gilchick, M.D.*, ¶ 3 submitted concurrently herewith.]  LMU developed its policies independently of the County.  The fact that LMU might have followed general County guidelines does not make the County responsible for LMU's actions.  Plaintiffs' *ex parte* application for a temporary restraining order and for an order to show cause re preliminary injunction must be denied.

---

[2]  Plaintiffs contend in their brief that "LMU has advertised that is has enacted and is carrying out the challenged Policy at the behest of and in coordination with the Los Angeles County Department of Public Health."  [ECF 18, at 7:16-18.]  Of course, Plaintiff cites no evidence for this proposition.  In fact, the *only* LMU document Plaintiffs submitted makes clear that LMU followed generally applicable County and CDC guidelines; it does not suggest that the County formulated LMU's guidelines.  [*See, e.g.*, ECF 18-1, at 5 ("LMU follows CDC and LACDPH guidelines regarding COVID testing and quarantine for students who are not vaccinated.").]

**2.    Plaintiffs' Claims Fail In Their Entirety Because Even If The County Defendants Are Properly Joined Here, Any Actions By The County Defendants Are A Constitutional Exercise Of Emergency Powers.**

"In lawsuits seeking injunctive relief against local government action in response to the COVID-19 crisis, district courts, appellate courts, and the Supreme Court have looked to *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905)." *Brach v. Newsom*, No. 2:20-cv-06472-SVW-AFM, 2020 WL 6036764, at *2 (C.D. Cal. Aug. 21, 2020) (collecting cases), *aff'd* No. 20-56291 (9th Cir. July 23, 2021) (slip opinion). Analyzing government action in response to COVID-19 under *Jacobson*, courts have applied "an especially strong presumption of constitutionality" unless the government action has no real or substantial relation to public health, or constitutes a palpable invasion of fundamental rights. *See*, *e.g.*, *id.*; *see also S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716 (2021) (Roberts, C.J., concurring) (declining to enjoin enforcement of the orders' ban on in-person religious services); *Best Supplement Guide, LLC v. Newsom, et al.*, No. 2:20-cv-00965-JAM-CKD, 2020 WL 2615022, at **3-7 (E.D. Cal. May 22, 2020) (concluding that the State's orders are a "constitutional response to an unprecedented pandemic").

Applying this strong presumption of constitutionality here, it is clear that Plaintiffs' claims based on the County Defendants' COVID-19 mitigation policies fail, and Plaintiffs are not entitled to injunctive relief.

**3.    Plaintiffs' Second Claim For Violation Of The Free Exercise Clause Of The First Amendment And Article 1, § 4 Of The California Constitution Fails.**

Religious beliefs do not excuse compliance with otherwise valid laws regulating matters traditionally subject to state regulation. *Employment Div., Ore. Dept. of Human Res. v. Smith*, 494 U.S. 872, 877-82 (1990) . Under *Smith*, a law

that allegedly burdens religious practices is subject to ***rational basis review*** under the First Amendment so long as it is a valid and neutral law of general applicability. *Id.* at 879. "To permit religious beliefs to excuse acts contrary to law . . . 'would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself.'" *Catholic Charities of Sacramento, Inc. v. Sup. Ct.*, 32 Cal. 4th 527, 548 (2004) (quoting *Smith*, 494 U.S. at 879). Moreover, "the right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." *Prince v. Massachusetts*, 321 U.S. 158 (1994); *see also S. Bay United Pentecostal Church v. Newsom*, 959 F.3d 938, 939 (9th Cir. 2020) ("We're dealing here with a highly contagious and often fatal disease [COVID-19] for which there presently is no known cure.").

"Although the Ninth Circuit has yet to decide a case involving a challenge to a mandatory vaccination law, two other Circuits and the California Supreme Court have decided such cases" *Whitlow v. California*, 203 F. Supp. 3d 1079, 1084 (S.D. Cal. 2016) (citing *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) (finding "mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause"); *Workman v. Mingo County Bd. of Ed.*, 419 Fed. App'x 348, 352–54 (4th Cir. 2011) (finding "statute requiring vaccinations as a condition of admission to school does not unconstitutionally infringe [plaintiff's] right to free exercise"); *Abeel v. Clark*, 84 Cal. 226, 230-31 (1890) (finding constitutional statute requiring smallpox vaccine for students and noting that vaccination was "the most effective method known of preventing the spread of the disease")).

The LMU Policies are generally applicable and neutral toward religion because they apply to students regardless of their religious beliefs. [ECF 1, at ¶ 2 ("all students were required to be vaccinated against COVID-19, or otherwise submit to testing, masking, distancing," and other procedures).] Plaintiffs attempt to

escape this conclusion by arguing that once a student obtains a vaccination exemption, certain policies apply *only* to those students.  Thus, according to Plaintiffs, "students who are religious adherents are being targeted."  [ECF 18, at 11:16-17.]  But, as Plaintiffs themselves acknowledge in the preceding clause, LMU's policies apply to *all students* who are unvaccinated, regardless of the reason. [*Id.* at 11:15 (noting "religious (or medical) reasons").]  This case is vastly different from *Tandon v. Newsom* ___ U.S. ___,141 S. Ct. 1294 (2021).  In that case, California banned certain religious services while "permitting hair salons, retail stores, personal care services, movie theaters, private suites at sporting events and concerts, and indoor restaurants to bring together more than three households at a time." *Id.* a 1297.  Here, by contrast, all students, regardless of their beliefs, are given the choice to provide proof of vaccination, or comply with the other LMU Policies.  Thus, the LMU Policies are subject to rational basis review, and readily survive that scrutiny, as discussed below.[3]

**4.      Plaintiffs' First Claim For Violation Of Their Rights To Equal Protection Under The Federal And California Constitutions Fail.**

"The Equal Protection Clause does not forbid classifications.  It simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "Classifications that do not implicate fundamental rights or a suspect class are permissible so long as they are 'rationally related to a legitimate state interest.'" *United States v. Padilla-Diaz*, 862 F.3d 856, 862 (9th Cir. 2017) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).  "Evidence of different treatment of unlike groups does not support an equal protection

---

[3]  Moreover, even if strict scrutiny applied, courts have found that mandatory vaccination laws for students survive that test. *See Brown v. Smith*, 24 Cal. App. 5th 1135, 1145 (2018) ("Even if we were to assume that laws requiring vaccination substantially burden the free exercise of religion and therefore merit strict scrutiny, plaintiffs' claim fails.").

claim." *Wright v. Incline Village Gen. Improvement Dist.*, 665 F.3d 1128, 1140 (9th Cir. 2011).

Under rational basis review, if there are "plausible reasons" for challenged government action, the challenged governmental action survives. *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993) ("a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification"); *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004) ("Where there are plausible reasons for legislative action, our inquiry is at an end") (cleaned up). Likewise, under rational-basis review the government's choice "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1087 (9th Cir. 2015); *Beach Commc'ns*, 508 U.S. at 318-20 (upholding challenged statute where government showed a "conceivable basis" for distinctions drawn).

Here, the LMU Policies address both vaccinated and unvaccinated students, and, as explained above, do not implicate fundamental rights or make classifications based on religious beliefs. Such distinctions, even where persons remain unvaccinated due to personal or religious beliefs, are subject to rational basis review. *Whitlow*, 203 F. Supp. 3d at 1087 (finding students with personal belief exemptions to required vaccines were "not similarly situated to children without [personal belief exemptions]"). This same rule applies under California's Equal Protection Clause. *See Brown*, 24 Cal. App. 5th at 1147 (upholding mandatory vaccine law against Article I, § 7 challenge where alleged class was defined by vaccination status; citing *Whitlow* with approval). Thus, rational basis review applies here.

There is a clear rational basis for the LMU Policies, which treat vaccinated students differently than those with exemptions. The former are completely

1  vaccinated, while the latter are not. *Whitlow*, 203 F. Supp. 3d at 1087 ("[T]here is a

2  rational basis for treating children with PBEs differently from other children: The

3  former are not completely vaccinated, if at all, while the latter are fully vaccinated.")

4  This survives rational basis review, and Plaintiffs' *ex parte* application for a

5  temporary restraining order and for an order to show cause re preliminary injunction

6  should be denied.[4]

7          **5.**     **Plaintiffs' Third Claim For Violation Of The Fourth Amendment**

8                     **Is Meritless.**

9          The Fourth Amendment protects "[t]he right of the people to be secure in

10  their persons, houses, papers, and effects, against unreasonable searches and

11  seizures." The Fourth Amendment's guarantee has been extended "to searches and

12  seizures by state officers, including public school officials." *Veronia Sch. Dist. 47J*

13  *v. Acton*, 515 U.S. 646, 652 (1995). While governmental searches for criminal

14  wrongdoing must be supported by probable cause and generally require a warrant,

15  searches by school officials are held to a lesser standard. *Id.* at 653. The school

16  setting "requires some easing of the restrictions to which searches by public

17  authorities are ordinarily subject." *Scott v. Cty. of San Bernardino*, 903 F.3d 943,

18  948 (9th Cir. 2018). "'[W]hile children do not shed their constitutional rights at the

19  schoolhouse gate,' their rights are nonetheless different in the schoolhouse." *Aviles*

20  *v De Blasio*, No. 20 Civ. 9829 (PGG), 2021 WL 796033, at *22 (S.D.N.Y. Mar. 2,

21  2021) (cleaned up). Plaintiffs assert that the LMU Policies requiring COVID-19

22  testing and contact tracing for unvaccinated students violate the Fourth

23

24  ―――――――――――――

    [4] Plaintiffs also plead in the *Complaint* that the LMU Policies infringe their rights

25  under the Equal Protection Clause by placing conditions on students based on their
    vaccination status while not placing these same conditions on faculty and staff.

26  However, Plaintiffs have not alleged what restrictions are placed on faculty and
    staff. Moreover, the LMU Policies address student housing requirements, which are

27  not a concern for unvaccinated and vaccinated students. [*See* ECF 1, at ¶¶ 25, 118.]
    University faculty and staff do not typically live in on-campus housing, providing a

28  rational basis for the distinction between faculty and students.

1  Amendment.  [ECF 1, at ¶¶ 1, 36.]   Plaintiffs do not assert that the vaccine mandate

2  itself violates the Fourth Amendment.  [*See* ECF 1, at ¶¶ 129-136.]

3         As the Supreme Court has explained, in the public school context, a search

4  must be justified by "special needs."  *Veronia*, 515 U.S. at 653.[5]  In determining

5  whether special needs are present to conduct a particular search, courts consider:  (1)

6  the nature of the privacy interest upon which the search allegedly intrudes (*id.* at

7  654); (2) the character of the intrusion (*id.* at 658); and (3) the nature and immediacy

8  of the governmental concern at issue, and the efficacy of means for meeting that

9  concern (*id.* at 660).  The Southern District of New York applied *Veronia* to uphold

10  against a Fourth Amendment challenge a public school requirement that parents

11  consent to mandatory PCR testing of students to receive in-person learning.  *Aviles*,

12  2021 WL 796033, at *23.  The court stated that parents had been presented the

13  options to:  "(1) sign a consent form for in-school COVID-19 testing and receive in-

14  person instruction; or (2) do not sign the consent form and receive remote-learning

15  instruction."  *Id.* at *22.  The court found that the nature of the privacy interest at

16  stake was minimal because they were designed for the students' "own good and that

17  of their classmates," took place within the school environment, and were premised

18  on parental consent.  *Id.* The court also determined that the character of the intrusion

19  was minimal because the PCR test involved a short nasal swab that was not painful

20  and did not involve traditionally private bodily parts or functions.  *Id.*  As to the

21  final *Veronia* factor, the court determined that the nature and immediacy of the

22  governmental concern—controlling the spread of COVID-19 in schools—"could

23  hardly be more compelling."  *Id.* at *23.  The same reasoning applies here.[6]

24

---

25  [5]  Although LMU is a private university, to the extent Plaintiffs assert its actions are limited by the Fourth Amendment, the special needs doctrine should apply.  *Hill v.*

26  *Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994) (applying *Veronia* to NCAA drug testing regulations for university student athletes).

27  [6]  Plaintiffs assert that the Eighth Circuit's 2016 decision in *Kittle-Aikeley v Strong*,

28  844 F.3d 727 (8th Cir. 2016), mandates a different result.  [ECF 18, at 8:11-13.]

*First*, the nature of the privacy interest allegedly intruded is minimal.  LMU's mandatory routine testing of students involves a nasal swab to collect a biological sample.  [ECF 18, at 8:16-18.]  The nasal swab also takes place in the school environment, where students "have a lesser expectation of privacy than members of the population generally." *Veronia*, 515 U.S. at 657.

*Second*, the character of the intrusion complained of also is minimal.  The PCR nasal swab tests are performed in a matter of seconds, are not painful, and do not involve a body part or function traditionally shielded by great privacy.  *Aviles*, 2021 WL 796033, at *22 (describing the COVID-19 PCR nasal swab tests); *see also Veronia*, 515 U.S. at 685 (approving public school's mandatory urine testing for student athletes).  The mask mandates here likewise are minimally invasive because they require Plaintiffs to wear masks in places where they may come into close contact with other students, such as the gym.  [ECF 18-3, at 5:13-15; ECF 18-4, at 5:26-6:5.]

*Third*, the nature and immediacy of the governmental concern regarding COVID-19 "could hardly be more compelling." *Aviles*, 2021 WL 796033, at *23.  Indeed, in such circumstances, "public officials are not required to demonstrate that the search at issue is the 'least intrusive' means available." *Id.* (*citing Veronia*, 515 U.S. at 663).  Moreover, the mandatory PCR testing and contact tracing fulfill two of the primary prevention strategies recommended by the

---

Plaintiffs are wrong.  *Kittle-Aikeley* concerned universal drug testing of students at a community college where "no crisis sparked the Board of Regents' decision to adopt the drug-testing policy and that Linn State does not believe it has a student drug-use problem greater than that experienced by other colleges." 844 F.3d at 738.  Here, by contrast, the LMU Policies are a response to an ongoing public health crisis that cuts across all segments of the population.  Moreover, while *Kittle-Aikeley* acknowledged the *Veronia* standard, Plaintiffs ignore it.  Instead, their entire argument applies the standard applicable to Fourth Amendment challenges *outside* the school setting.  [ECF 18, at 9:1-10:19.]  Their entire argument, therefore, is inapposite.

1   CDC for combating COVID-19.[7]  The non-intrusive testing requirements and mask

2   mandate for unvaccinated students is reasonable under the circumstances.  *See*

3   *Klaassen v. Trs. of Ind. Univ.*, No. 1:21-CV-238 DRL, 2021 WL 3073926, at \*\*40-

4   41 (N.D. Ind. July 18, 2021) (finding masking and testing requirements for

5   unvaccinated students at Indiana University were minimally intrusive and

6   reasonable).  To the extent Plaintiffs allege that use of personal health data is an

7   invasion of privacy, courts have generally found that disclosure of such data is not a

8   violation of privacy rights.  *See*, *e.g.*, *In re iPhone Application Litig.*, 844 F.Supp.2d

9   1040, 1063 (N.D. Cal. 2012) (holding that disclosure to third parties of unique

10  device identifier number, personal data, and geolocation information did not

11  constitute an egregious breach of privacy).

12        Thus, under *Veronia*, Plaintiffs' alleged searches do not constitute violations

13  of their Fourth Amendment rights because the nature and character of the privacy

14  interest and the governments intrusion are minimal, while the nature and immediacy

15  of the government's concern regarding COVID-19 is a compelling justification.

16  **D.**  <u>**Plaintiffs' Have Not Established Irreparable Harm.**</u>

17        Plaintiffs bear a heavy burden to show that "irreparable injury [was] likely in

18  the absence of an injunction." *Winter*, 555 U.S. at 21–22.  To establish a likelihood

19  of irreparable harm, conclusory or speculative allegations are not enough.  *Herb*

20  *Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013).

21  "When, as here, a party has not shown any chance of success on the merits, no

22  further determination of irreparable harm or balancing of hardships is necessary."

23  *Global Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007).

24        Plaintiffs' argument that "deprivation of constitutional rights 'unquestionably

25  constitutes irreparable injury'" [ECF 18, at 15:16-17] is incorrect.  *See*, *e.g.*, *Rendish*

26

27  [7]  *K-12 Operational Strategy*, CDC, https://www.cdc.gov/coronavirus/2019-
    ncov/community/schools-childcare/operation-strategy.html (last updated Feb. 26,
28  2021).

*v. City of Tacoma*, 123 F.3d 1216, 1226 (9th Cir. 1997) ("In this circuit, no presumption of irreparable harm arises in a First Amendment retaliation claim."); *Great N. Res., Inc. v. Coba*, Case No. 3:20-cv-01866-IM, 2020 WL 6820793, at *2 (D. Or. Nov. 20, 2020) (collecting cases and noting that "In the past decade or so, the Ninth Circuit has required more than a constitutional claim to find irreparable harm . . . . This Court agrees with the other district courts in this Circuit that have rejected arguments of per se irreparable injury for constitutional claims and required something more."). Moreover, because Plaintiffs have not established that they are likely to succeed on any of their constitutional claims, the alleged deprivation of those rights cannot constitute irreparable injury.

Moreover, the actual harms Plaintiffs assert are pure, unsupported speculation, or result from a rational intrusion based on the circumstances of the pandemic. [ECF 18, at 15:16-16:12.] "Wearing masks, undergoing surveillance testing, and social distancing also aren't indicative of irreparable harm, but consistent with CDC guidelines." *Klaassen*, 2021 WL 3073926 at **41-42 (denying preliminary injunction challenging university mandated vaccination policies and masking, testing, and contact tracing requirements for students who received religious or medical exemptions). Moreover, to the extent Plaintiffs allege a hindrance of their college education, that also does not constitute irreparable harm. *Id.* at *114 ("[a] delay in collegiate or graduate education isn't typically irreparable harm.") (collecting cases). Thus, Plaintiffs' *ex parte* application for a temporary restraining order and for an order to show cause re preliminary injunction should be denied.

**E.    The County's Interest In Protecting Public Health Outweighs Plaintiffs' Interests, And Denying The Injunction Is In The Public Interest.**

As noted above, when the government is a party, as is the case here, the balance of the equities and public interest factors merge. As described above, Plaintiffs have suffered minimal, if any, cognizable harm. By contrast, the public

1  interest will be concretely and irreparably harmed if the LMU Policies are

2  invalidated.

3      Plaintiffs are two students out of nearly 10,000 who attend LMU.

4  https://www.lmu.edu/about/factsfigures/.  Any order removing vaccine and masking

5  mandates affects the safety of all of those students, and "countless others, including

6  teachers and staff, as well as all who could conceivably suffer serious illness or

7  death as a result of a school-based outbreak." *Brach*, 2020 WL 6036764 at *10.

8  The interest in preserving the health of the masses more than outweighs any public

9  interest that these two individual Plaintiffs have put forth.

10     Plaintiffs, for their part, contend, without citing any evidence but rather

11  relying on their *Complaint*, that "it is clear that college-age students are at negligible

12  risk of harm from COVID-19." [ECF 18, at 17:1-2.]  They further contend that PCR

13  testing is unreliable.  [*Id.* at 17:13-18.]  Finally, Plaintiffs contend that treating the

14  vaccinated and unvaccinated differently is the equivalent of the loathsome "separate

15  but equal" doctrine struck down in *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954),

16  because "[v]accinated and unvaccinated persons alike are capable of carrying and

17  transmitting the virus." [ECF 18, at 18:1-6.]  The CDC disagrees with Plaintiffs'

18  position.[8]  The California Department of Public Health disagrees with Plaintiffs'

19  position.[9]  There can be no doubt that following the recommendations of the federal

20  and state public health agencies—which happen to align with the County's own

21  policies—is in the public interest.  Plaintiffs' *ex parte* application for a temporary

22

23  [8] *See, e.g.*, Request For Judicial Notice ("**RJN**") **Ex. A** at 7 ("People living and working in congregate settings, including institutions of higher education (IHEs), are at increased risk for COVID-19."); RJN **Ex. D** at 28 ("COVID-19 vaccines are effective at protecting you from getting sick.  Based on what we know about COVID-19 vaccines, people who have been fully vaccinated can do things that they had stopped doing because of the pandemic."); RJN **Ex. A** at 8 (PCR tests are amongst those recommended in the CDC's guidance for testing and screening in Institutions of Higher Education).

24

25

26

27  [9] See, *e.g.*, RJN **Ex. F** at 35 ("Vaccinations are a safe and effective way of preventing COVID-19 disease, especially severe illness and death, and are the most important resource for keeping campus communities safe.").

28

1  restraining order and for an order to show cause re preliminary injunction should be

2  denied.

### III.

### CONCLUSION

For the reasons explained above, Plaintiffs' *ex parte* application for a

temporary restraining order and request for order to show cause re preliminary

injunction must be denied.

Dated:  August 5, 2021            SHEPPARD MULLIN RICHTER & HAMPTON
                                  LLP


                                  By _____
                                              */s/ Kent R. Raygor*
                                          KENT R. RAYGOR

                                  Attorneys for Defendants MUNTU DAVIS,
                                  M.D. and BARBARA FERRER. PhD